[No. 20170. Department One. January 25, 1927.]

PUGET SOUND BRIDGE & DREDGING COMPANY, *Respondent*, v. CHARLES H. FRYE, *Appellant*.[1]

[1] ARBITRATION AND AWARD (8)—MODE AND COURSE OF PROCEEDINGS. A formal arbitration agreement, full and complete in itself, constitutes the whole of the agreement to submit, and statements in writing of the claims of each party and stipulations as to the amount of yardage placed in certain fills are in the nature of evidence intended to facilitate the hearing which need not be returned with the award.

[2] SAME (2, 8)—CONSTRUCTION OF AGREEMENT—MODE AND COURSE OF PROCEEDINGS. A provision in an arbitration agreement requiring a party to state and to file with the arbitrator his claims as to the amount of earth required to fill each of the described tracts of land, and the compensation to which he is entitled, has reference to the procedure before the arbitrator and does not require a separate finding as to each description.

[1]Reported in 252 Pac. 546.

[4] SAME (8, 11)—MODE OF PROCEDURE—AWARD—MISTAKE OF FACT. Where an arbitrator was required to ascertain the amount of earth to bring lots up to a certain level, it is of no concern what method he used to do so, where the method adopted did not result in an error of fact.

[5] SAME (7)—PROCEEDINGS—NATURE AND EXTENT OF AUTHORITY. Where a contractor was entitled to receive pay for the amount of a fill as it appeared on the completion of the contract, the arbitrator is justified in determining the quantity of the fill as of that date, without allowing for shrinkage.

[6] SAME (11, 16)—AWARD—MISTAKE OR ERROR OF FACT—CONCLUSIVENESS. If, upon consideration of the evidence, an arbitrator makes a mistake of fact which does not appear on the face of the record, the court will not inquire into it.

Appeal from a judgment of the superior court for King county, Ronald, J., entered April 9, 1926, confirming an award on arbitration, after a hearing before the court. Affirmed.

*Donworth, Todd & Holman,* for appellant.

*Preston, Thorgrimson & Turner,* for respondent.

FULLERTON, J.—This is an appeal from a judgment entered upon an award made in an arbitration proceeding.

On August 3, 1923, the appellant, Charles H. Frye, being then the owner of certain tideland lots and blocks situated in the city of Seattle, entered into a contract with the respondent, Puget Sound Bridge & Dredging Company, by the terms of which the respondent agreed to fill the lots and blocks, together with the adjoining streets, with earth by hydraulic sluicing to stipulated levels. For the service, the appellant agreed to pay the respondent "twenty-three and one-half cents (23½) per cubic yard for all earth placed in the fill . . . .," and to make the payments from time to time as the work progressed, according to estimates

made by the engineer in charge. The respondent immediately entered upon the performance of the work, and in the early part of the year 1925, claimed to have completed it, and claimed that there was a balance due it upon the contract. Changes had been made in the original plans and specifications during the progress of the work by the mutual agreement of the parties, and these, with other matters, gave rise to differences between the parties as to the questions whether the work had been performed according to the terms of the contract with the subsequent modifications, and whether there was any balance owing to the respondent. To settle these differences, the parties agreed to submit them to the arbitration of one R. H. Thomson. They thereupon entered into the following agreement:

"It is agreed by Charles H. Frye, party of the first part, and Puget Sound Bridge & Dredging Company, a Nevada corporation, party of the second part, as follows:

"(1.)    The parties hereto entered into a certain written agreement, a copy of which is hereto annexed, whereby first party employed second party to fill by hydraulic sluicing certain portions of the Seattle Tide Lands described in said contract. Second party entered upon the performance of said work and claims that it has completed said contract (as amended by certain subsequent agreements) and is entitled to a certain balance of compensation therefor. First party disputes said claims and asserts certain counter-claims against second party arising out of alleged delays and improper and negligent performance of said work by second party.

"(2.)    The parties hereto hereby agree to submit all of their disputes arising out of the making and performance of the aforesaid contract, and any subsequent agreements relating to said work to R. H. Thomson as arbitrator. It is agreed that, within fifteen (15) days after the signing of this agreement,

second party shall serve on first party and file with said R. H. Thomson a written statement of its claim as to the amount of its fill and the compensation it is entitled to for said fill as to each of the descriptions of property set out in the contract annexed hereto, or any modification thereof, together with the total balance it claims now to be due from said Charles H. Frye. Within fifteen (15) days thereafter first party shall serve on second party and file with said R. H. Thomson his claim as to the particulars in which second party has failed to fulfill the terms of the aforesaid written agreement and any subsequent agreements between the parties relating thereto, together with any claims he may have against second party for damages on account of delay in the performance of said work, failure to perform said work in accordance with the aforesaid agreements, negligence in the performance of said work, or other counterclaims or claims of damage arising out of the making and performance, or failure to perform, said contracts, or arising out of second party's work on adjoining portions of said tide lands.

"(3.)   After the expiration of the time herein allowed for the filing of statements of the parties, and at a time to be fixed by agreement of the parties, or by said arbitrator in the absence of such agreement, said arbitrator shall proceed to hear such evidence as shall be submitted by the parties hereto and take such steps as he may desire to investigate and determine the respective claims of the parties, and shall render his award in writing in accordance with the statutes of the state of Washington. The parties hereto shall each pay one-half of the charges of said arbitrator and shall be bound by his award as provided by the laws of the state of Washington.

"Dated at Seattle, Washington, this 7th day of February, 1925.                           Charles H. Frye
"Attest:                    Puget Sound Bridge & Dredg-
"Raymond J. Hoff,                  ing Company
"Secretary.    (Seal.)
                    "By Roy E. Miller, Vice President."

The arbitrator took the statutory oath as such and thereafter proceeded to hear and determine the matters submitted to him, at which hearing the parties appeared in person and by counsel. At the conclusion of the hearing, the arbitrator made the following findings and conclusions:

"January 18th, 1926.

"FINDINGS OF ARBITRATOR

"In the matter of the cause of Puget Sound Bridge and Dredging Company vs. C. H. Frye, being claims for material and labor furnished in making fills upon block 226, block 228, block 242, block 251, block 277, and a tract in block 243, all in Seattle Tide Lands, said fill having been made in the years 1923 and 1924.

"Having carefully studied the contract under which this work was done, and having heard and noted the testimony taken with reference to each claim upon the part of the plaintiff and each counter-claim on the part of the defendant, and having heard the arguments and carefully read the transcript of the stenographic notes of the arguments made by the attorneys on both sides, together with the briefs of attorneys covering certain points, and having given due consideration to all the facts bearing upon the case, the arbitrator finds:

"That upon its claim the plaintiff is entitled to recover for delivery of earth under the contract as shown between levels of the original ground and surface at the time of joint measurement by Fischer and Stuver, and for subsidence in the subsoil occasioned by the weight of the fill, a total of two hundred twenty-nine thousand three hundred eighty (229,380) cubic yards, which, at the contract price of twenty three and one-half cents (23½) per cubic yard, amounts to fifty-three thousand, nine hundred four dollars and thirty cents. $53,904 30

"Also for undisputed incidentals in the sum of two thousand eighty-four dollars and forty-six cents........... 2,084 46

"Making a total sum of fifty-five thousand nine hundred eighty-eight dollars and seventy-six cents............. $55,988 76

"The arbitrator finds that there
has been paid on the above, the sum
of thirty-nine thousand two hundred
seven dollars and sixty-eight cents........  39,207 68

"Leaving as balance due, regard-
less of interest to be added and coun-
ter-claims to be deducted, the sum of
sixteen thousand seven hundred eigh-
ty-one dollars and eight cents............  16,781 08

"Having carefully reviewed the
counter-claims with reference to the
contract and the testimony, the arbi-
trator disallows counter-claims A, B,
F, G and I, counter-claims D and K
having been heretofore waived, but
arbitrator allows on counter-claim
Exhibit C the sum of two hundred
thirty-four dollars and twenty-five
cents .............................$234 25

"On Exhibit E the sum of one
hundred dollars and eight cents.... 100 08

"On Exhibit H the sum of eight
hundred ninety-three dollars and
three cents ...................... 893 03

"On Exhibit J the sum of five hun-
dred ninety-four dollars and sixty
cents ........................... 594 60

"Making a total of one thousand
eight hundred twenty-one dollars and
seventy-one cents ......................  1,821 71

which, deducted from sixteen thou-
sand seven hundred eighty-one dol-
lars and eight cents ($16,781.08)
leaves the sum of fourteen thousand
nine hundred fifty-nine dollars and
thirty-seven cents ...................... $14,959 37

"Arbitrator allows interest at the
rate of 6% per annum for nine
months, being the sum of six hundred
seventy-three dollars and seventeen
cents ................................  673 17

which, added to the fourteen thousand nine hundred fifty-nine dollars and thirty-seven cents above stated, shows a balance due Puget Sound Bridge and Dredging Company in the sum of fifteen thousand six hundred thirty-two dollars and fifty-four cents ................................. $15,632 54

"Respectfully submitted,
"R. H. THOMSON,
"Arbitrator."

After making the award, the arbitrator, following the provisions of the statute (Rem. Comp. Stat., § 422) [P. C. § 7341], sealed the award and delivered it to the attorneys of the respondent, who, in turn, without breaking the seal, delivered it to the county clerk of the superior court of King county, the clerk of the superior court of the county wherein the arbitration was had. The arbitrator also delivered a copy of the award to the same attorneys, who caused a copy thereof to be served on the attorneys representing the appellant. To the award, the appellant, through his attorneys, took the following exceptions:

"Comes now Charles H. Frye and, pursuant to statute in such cases made and provided, herewith excepts in writing to the arbitrator's award, notice of the filing of which herein was served upon the undersigned attorneys for said Charles H. Frye on the 11th day of February, 1926.

I.

"That the said arbitrator has not complied with the provisions of section 422 of Remington's Compiled Statutes 1922, and has committed error in law, in failing and refusing to accompany his award with the written statements of claim of the respective parties mentioned and authorized by their preliminary agreement for arbitration and intended as part of the same; that said written statements of claim constituted and fixed the scope of the arbitrator's authority and spe-

cifically set out the particular matters which the parties finally agreed should be arbitrated; that without said written statements of claim said preliminary agreement to submit is incomplete and abortive.

## II.

"That supplementary to the written claims filed and before any trial or the taking of evidence, there was filed by the parties a written stipulation of certain agreed yardages covering separately each parcel of ground filled as described in the original construction contract; that such written stipulation became in effect part of the written agreement of submission and was a written limitation by the parties upon the powers of the arbitrator and the scope of the arbitration; said arbitrator committed error  in law, in failing and neglecting to accompany his award by this supplementary agreement of the parties affecting the scope of the submission.

## III.

"That said preliminary agreement and the written claim of Puget Sound Bridge & Dredging Company filed pursuant thereto and as a part thereof, specifically required a separate submission to said arbitrator and a separate finding by said arbitrator of the amount of fill 'as to each of the descriptions of property' set out in the original construction contract; that as shown by said original contract, the elevations, grades and conditions affecting each separate parcel of property were materially different, and the arbitration agreement contemplated that the parties were to have the benefit of the arbitrator's separate and independent judgment as to each of the parcels filled; that said arbitrator has committed error in law and in fact and violated the true intent of the submission, by failing and neglecting to make a separate finding of yardage as to each specified parcel or tract of land.

## IV.

"That in the matter of payment for earth placed in the fills, the original construction contract made no provision for any theoretical allowance 'for subsidence in the subsoil occasioned by the weight of the fill;' that

the arbitrator committed error in law and in fact, in including in any aggregate finding of yardage a theoretical factor for subsidence.

## V.

"That said arbitrator committed error in law and in fact, in making an allowance for subsidence and neglecting to take any account of the simultaneously occurring shrinkage of said fills occasioned by the draining out of the excess water content.

## VI.

"That in filing its written statement of claim, the Puget Sound Bridge & Dredging Company was specifically limited by the preliminary arbitration agreement to filing a claim 'as to the amount of its fill and the compensation it is entitled to for said fill as to each of the descriptions of property set out in the contract' —and the balance due from said Charles H. Frye on that account; that the arbitrator committed error in law and in fact and exceeded his jurisdiction, in including in his award an allowance of two thousand eighty-four and 46/100 ($2,084.46) dollars for incidentals (which he erroneously recites were undisputed).

## VII.

"That said arbitrator committed error in law and in fact, in disallowing counter-claim A, B, F, G and I; that said arbitrator committed error in law, in making his construction of the original contract a basis for disallowing counter-claims A, B, F, G and I.

"Wherefore, said Charles H. Frye prays that he be accorded a hearing upon the foregoing exceptions, and that upon said hearing he be granted relief as follows:

"First: That said arbitrator be directed to complete the record on file herein, by forwarding to the clerk of this court the original statements of claim mentioned in paragraph I of these exceptions, and the original stipulation mentioned in paragraph II of these exceptions, and that when said record has been properly completed, said Charles H. Frye have twenty (20) days thereafter in which to file exceptions based upon the record as then completed.

"Second: That said award be set aside and the cause referred back to said arbitrator for the correction of the errors of law and fact specified in these exceptions, and that said arbitrator be directed to amend said award as herein specified and return to this court a proper award in due form.

"Third: That the court take such other action in the premises as is meet and equitable.

"Dated this 1st day of March, 1926."

A hearing was had on the exceptions, at the conclusion of which the court entered the following judgment:

"The above entitled cause having come on to be heard on the 8th day of April, 1926, upon the exceptions of Charles H. Frye to the award of the arbitrator herein filed, and upon motion of Puget Sound Bridge & Dredging Company for judgment upon said award, the plaintiff being present by Messrs. Donworth, Todd, Higgins & Holman, attorneys for said Frye, and the said Puget Sound Bridge & Dredging Company by its attorneys Preston, Thorgrimson & Turner, and the said exceptions having been presented to the court and argued by counsel and submitted for its decision and the court having taken same under advisement, and now being duly advised in the premises,

"It is now by the court, said parties being present by their said attorneys, ordered that said exceptions and each of them be and the same are hereby overruled, and the said motion for judgment upon the award is granted.

"Wherefore, it is ordered and adjudged that the said award of the arbitrator be and the same is hereby approved and confirmed and that Puget Sound Bridge & Dredging Company do have and recover of and from Charles H. Frye the amount of said award, to wit, $15,632.54, together with interest on $14,959.37, the amount of the principal of said award, from the date of said award, the 18th day of January, 1926, to this date, in the additional sum of $199.44, making the total sum for which judgment is hereby given said Puget Sound Bridge & Dredging Company against said Charles H. Frye the sum of $15,831.98 and in addition

thereto said Puget Sound Bridge & Dredging Company is hereby adjudged to recover costs herein to be taxed against said Charles H. Frye. To which foregoing holdings of the court and each of them the defendant Charles H. Frye excepts and his exceptions are hereby allowed.

"Done in open court this 9th day of April, 1926."

The statute relating to arbitration is found at §§ 420 to 430 of Rem. Comp. Stat. (P. C. §§ 7339-7349). The statute, after providing that all persons desirous to end, by arbitration, any controversy, suit, or quarrel, except such as respects the title to real estate, may submit their difference to the award or umpirage of any person or persons mutually selected, and that such agreement to arbitrate shall be in writing, signed by the parties, further specifically provides:

"§ 426. Arbitrators, or a majority of them, shall have power,— . . .

4. To decide both the law and the fact that may be involved in the cause submitted to them."

"§ 422. The said arbitrators shall be duly sworn to try and determine the cause referred to them, and a just award make out, under the hands and seals of a majority of them, agreeably to the terms of the submission. Said award, together with the written agreement to submit, shall be sealed up by the arbitrators and delivered to the party in whose favor it shall be made, who shall deliver the same, without breaking the seal, to the clerk of the superior court of the county wherein said arbitration is held, who shall enter the same on record in his office. . . . if no exceptions be filed against the same . . . judgment shall be entered as upon the verdict of a jury, . . . "

"§ 424. The party against whom an award may be made may except in writing thereto for either of the following causes:

"1. That the arbitrators or umpire misbehaved themselves in the case;

"2. That they committed an error in fact or law;

"3.   That the award was procured by corruption or other undue means."

"§ 425.   If upon exceptions filed it shall appear to the said superior court that the arbitrators have committed error in fact or law, the court may refer the cause back to said arbitrators, directing the amendment of said award forthwith, returnable to said court, and on the failure so to correct said proceedings, the court shall be possessed of the case and proceed to its determination."

"§ 430.   Such award, when so affirmed, shall be in all respects like any other judgment of the superior court, and a transcript of such judgment, or execution issued thereon, recorded in the county auditor's [clerk's] office in the same manner as other judgments, shall be a lien upon real estate in said county."

Construing these statutes, this court has held that there is in this state no such thing as a common law arbitration; that the proceeding is wholly statutory; and that the rights of the parties to the proceeding are governed and controlled by the statute. As we said in *Dickie Manufacturing Co. v. Sound Const. & Eng. Co.*, 92 Wash. 316, 159 Pac. 129:

"   .   .   .   Those who enter into arbitration accept in advance the jurisdiction of the superior court. .   .   .   Common law arbitration has ceased to exist. If there is no proper agreement under the statute, then there is no arbitration at all.  But once the parties do properly agree on arbitration, there can be no revocation."

We have also held that the error of law or fact which the court is empowered to review must be error appearing on the face of the award—that it will not enter into a collateral inquiry to ascertain whether error in this respect has been committed, as to do so would be to make an arbitration proceeding but the beginning of a legal controversy, whereas the statute contemplates it shall be its end.  *School District v. Sage,* 13 Wash. 352,

43 Pac. 341; *Hatch v. Cole,* 128 Wash. 107, 222 Pac. 463.

We have also held that where the arbitrator has returned with his award the evidence introduced before him, we would not consider it for the purpose of determining whether he had committed error of law or fact. *School District v. Sage, supra.*

It may be that a different rule would be necessary, were the arbitrator charged with misbehaviour, or were it charged that the award was procured by corruption or other undue means, but this we need not here determine. There is no contention that the arbitrator "misbehaved" in the ordinary acceptation of that term, nor is it charged that he was guilty of corruption. It then remains to inquire whether the face of the award shows that the arbitrator committed error either of fact or of law.

[1] Under its exceptions I and II, the appellant argues that the arbitrator failed to comply with the terms of the statute, in that he did not return with his award the "written agreement to submit," as required by the provisions of § 422 of the cited statute. This contention has its foundation in the provisions of paragraph 2 of the agreement to arbitrate. It is therein provided that the party of the first part (the respondent in this court) shall within fifteen days after the signing of the agreement to arbitrate, file with the arbitrator and serve on the first party (the appellant in this court) a written statement of its claim as to the amount of the fill made by it, and the compensation it is entitled to as to each of the descriptions of property set out in the construction contract entered into by the parties, or any modifications thereof, together with the total balance it claims to be due; and further provides that within fifteen days thereafter the first party shall serve on the second party, and file with the arbitrator, his claim as to the particulars in which the

second party has failed to comply with the terms of the contract, together with his counter-claims and claims for damages arising therefrom. It seems, too, that in the progress of the hearing the parties stipulated in writing as to the amount of yardage placed in certain of the fills. The argument is that these, when supplied, became a part of the agreement to submit, and that the arbitrator should for that reason have returned them with his award. But it is our opinion that the formal agreement signed and executed by the parties was full and complete in itself, and constituted the whole of the agreement to submit; and that the statements in writing of the claims of each of the parties, and the stipulation as to the amount of the yardage placed in certain of the fills, were in the nature of evidence, intended to facilitate the hearing before the arbitrator. Manifestly, had the agreement not contained the requirements that the claims be stated in writing, it would have been competent, and, indeed, necessary, for the parties to have gone before the arbitrator and stated them orally. It would seem that the arbitration could hardly have proceeded without their statement in some form. Had they been stated orally, no one, we think, would contend that they were a part of the agreement to submit, but, on the contrary, would consider them to be on a par with the oral evidence, the written documents submitted as evidence, and such other matters as were submitted to the arbitrator for his consideration. The fact that it was stipulated that the claims should be submitted in writing, does not change their nature in this respect. They are still documents solely for the consideration of the arbitrator, and we cannot think he violated any part of his duty as arbitrator when he failed to return them with his award.

This view is strengthened, we think, when the third paragraph of the arbitration agreement is considered.

It is there provided that the arbitrator shall, after the time has expired for filing the claims, "proceed to hear such evidence as shall be submitted by the parties hereto and take such steps as he may desire to investigate and determine the respective claims of the parties." It would seem that, if the clause in the second paragraph of the agreement required the arbitrator to return with his award the claims of the parties filed with him, this clause of the contract would equally require that he also return therewith the evidence submitted to him; a return which we have held unwarranted and of no avail.

[2] Arguing upon the third of his exceptions, the appellant contends that the award was not in substance "agreeably to the terms of the submission." This contention has its foundation in the failure of the arbitrator to make a separate finding as to the number of cubic yards of fill in each specific parcel of land described in the construction contract. But we find no such requirement in the agreement to arbitrate. It is true, it is provided therein that the respondent shall, in its statements of its claims which it was required to file with the arbitrator, state the amount of the fill and the compensation it is entitled to "as to each of the descriptions of property set out in" such contract, but this, as we have attempted to show, was but a part of the procedure had before the arbitrator. It did not control the form of his return, nor control the matter thereof further than its matter was controlled by the other documents and the evidence submitted to him for his consideration. The arbitrator's duty, under the agreement of submission, was to hear the parties and make a just award agreeably to the terms of the submission, and in our opinion his award, with respect to the amount thereof, would have been sufficient had he

stated, without more, that the respondent was entitled to the sum of money he found to be due; or, stated in another way, it is our opinion that his return, as it is, contains more of detail than the agreement of submission required.

[3] Under the fourth of its exceptions, the appellant argues that the arbitrator committed error in law and in fact in including in his award a "theoretical factor for subsidence." The finding of the arbitrator on which this contention is founded is in the following language:

"That upon its claim the plaintiff is entitled to recover for delivery of earth under the contract as shown between levels of the original ground and surface at the time of joint measurement by Fischer and Stuver, and for subsidence in the subsoil occasioned by the weight of the fill, a total of two hundred twenty-nine thousand three hundred eighty (229,380) cubic yards."

But we see nothing in this that warrants criticism. Under the terms of the construction contract, which was attached to the agreement to arbitrate, the respondent was required to place sufficient earth on the lots, as they then stood, to bring them up to a stated level. By the same contract it was entitled to a specific sum for each cubic yard necessary to make the fill. To ascertain this quantity was the duty of the arbitrator. The method or procedure he adopted to ascertain the quantity was solely within his province. It is of no concern of the courts, unless it appears on the face of the return, that the method adopted must result in an error of fact; in the particular instance, it must appear that the method adopted in ascertaining the quantity resulted in a greater allowance of yardage than the respondent was justly entitled to. Plainly, we think, this finding does not show such a condition. If the arbitrator adopted the measurements of others rather

than making them himself, he was within his rights in so doing. No obligation rested upon the arbitrator to make the measurements personally. Indeed, measurements of this character belong to the science of engineering, and engineering is among the learned professions, and were an arbitrator not permitted to take the measurements of others skilled in that profession, no one but a skilled engineer could act as arbitrator in an instance of this sort. Without going beyond the face of the record, therefore, we cannot say that he committed an error of fact or law in his method of ascertaining the quantity of earth the respondent placed in the fill.

[4] Under the fifth exception, the appellant argues that, if an allowance is to be made for subsidence, a corresponding allowance should have been made for shrinkage. But we find no justification for this contention. The respondent was entitled to a stated sum per cubic yard for the number of cubic yards of earth it took to fill the lots and streets to the stated levels. The contract under which the fill was made contemplated that the final measurement of quantity should be made when the contract was completed. It is, of course, a matter of common knowledge that a fill made of earth by sluicing will shrink in bulk as time elapses, and that the ultimate level of the fill will be lower than it is when the work is first completed. But neither the construction contract nor the agreement to arbitrate made any reference to this condition. Possibly, the fill was made to a higher level than it was ultimately expected to stand to accommodate a possible shrinkage. But, be this as it may, since the respondent was entitled to receive pay for the amount of the fill as it appeared on the completion of the contract, the arbitrator was justified in determining the quantity of the fill as of at that time, without an allowance for shrinkage, and

the return does not show that his award is not in accord therewith.

[5] Under its sixth exception, the appellant argues that the arbitrator erred in fact in allowing to the respondent the sum of $2,084.46 for undisputed incidentals, contending that there were no such incidentals undisputed. But this was a question for the determination of the arbitrator from a consideration of the evidence, and, if he made a mistake in this regard, it does not appear on the face of the return. It is thus not a question into which the court may inquire.

It is evident from the earnestness with which the appellant's learned counsel has presented his cause, that the appellant feels sorely aggrieved at the amount of the award the arbitrator returned against him. But, since he chose the method of arbitration to determine the dispute between himself and his adversary, he must abide the result, however unrighteous the award may appear to him. The court cannot relieve, unless it finds error of law or fact appearing on the face of the return, and we cannot conclude that any such error here so appears.

The judgment is affirmed.

Tolman, Main, and Mitchell, JJ., concur.