[No. 26099. Department Two. October 29, 1936.]

AL GORD, *Respondent*, v. F. S. HARMON & COMPANY, *Appellant*.[1]

[1]Reported in 61 P. (2d) 1294.

*Burkey & Burkey*, for appellant.
*L. B. Sulgrove*, for respondent.

MAIN, J.—This action was brought to recover the balance claimed to be due for wages. The plaintiff brought the action in his own behalf and upon approximately twenty-nine claims, similar to his own, which had been assigned to him for collection. The cause was tried to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to recover upon all the claims sued upon. From the judgment entered against the defendant in the sum of $3,697.47, it appeals.

The appellant, F. S. Harmon & Company, is a corporation, with its principal place of business in the city of Tacoma, where it is engaged in the manufacture of upholstered furniture. The Northwest Furniture Manufacturers Association is a nonprofit trade association of which furniture manufacturers are members. Its purpose was to aid in the sales and shipments for the

various factories. Charles W. Pope was regional director of the Pacific Northwest Regional Labor Board.

October 2, 1934, the upholsterers employed in the various manufacturing plants in the cities of Seattle and Tacoma went out on a strike. Among other things, there was in dispute between the employers and the employees the matter of wages. The parties not being able to reach an agreement, November 6, 1934, E. P. Marsh, of the United States department of labor, in Seattle, met representatives of the employers and employees in an endeavor to adjust their differences. Not having been successful in this, Mr. Marsh proposed that the matters in dispute be referred to the Pacific Northwest Regional Labor Board having offices in Seattle. This was agreed to by the individual furniture manufacturing companies which composed the Northwest Furniture Manufacturers Association and which operated plants in Seattle and Tacoma.

An agreement in writing was drawn up and signed by the presidents of the two unions and the furniture manufacturers association, which agreement was as follows:

"Proposal to be submitted to arbitration of disputes existing between the Northwest Furniture Manufacturing Association and Local No. 40 of Tacoma, and Local No. 6 of Seattle, affiliated with the American Federation of Labor.

"There is this day submitted by Commissioner E. P. Marsh of the United States Department of Labor, to the joint conference committee, representatives of both sides of the above entitled controversy, a proposal for arbitration of this dispute as follows:

"That all those in the employ of the plants party to this dispute on October 2nd, 1934, should be returned to their employment without prejudice or discrimination because of their activities.

"That all difficulties and disputes between the above entitled parties shall be submitted for consideration

and arbitration to the Pacific Northwest Regional Labor Board, having offices in Seattle, Washington.

"That the word of this Board, in so far as relates to wages shall be retroactive to the date of return to work in these plants.

"Said arbitration to be conducted as expeditiously as possible by the Board, and decision handed down within 30 days from date of return to work.

"This submission is proposed by Commissioner Marsh, with request to both sides in conference on this date, that it be referred back to their principals, namely, the Northwest Furniture Manufacturing Association, and Locals No. 40 of Tacoma and No. 6 of Seattle, for consideration and secret ballot, advising the Commissioner of the decision reached.

"The undersigned hereby agree to submit above proposal of Commissioner Marsh, to our principals for consideration and decision as requested above.

"AL. GORD, Pres. Local 40,
"A. J. MASOERO, Pres. Local 6,
"FRED SHOEMAKER, Pres. N. W. F.
"Nov. 6, 1934.                                    Mfrs. Assn."

This agreement was ratified by the various manufacturers and by the employees, and the latter returned to work on November 14, 1934. It will be noted that, under the agreement, if the board chosen to settle the difficulties increased the wages, they should be retroactive to the date of return to work in the plants. Mr. Hope, the director of the regional labor board, chose three men to hear the evidence, which board convened in Seattle November 27, 1934. When the board convened, with all of the parties involved being represented, the following occurred:

" 'Mr. CHARLES W. HOPE, Regional Director: Gentlemen, this meeting will come to order. As a means to a settlement, a proposal was submitted to Commissioner E. P. Marsh of the United States Department of Labor and the Northwest Furniture Manufacturers Association and Local No. 40 of Tacoma and Local No. 6 of Seattle. After consideration, after a considerable

time, the proposal was accepted and it was agreed that this controversy should go into arbitration before the Regional Labor Board, and this Board set up.

" 'We selected a Board, and in selecting this Board we chose Dean S. J. Coon, of the Department of Economics of the University of Washington, as Chairman, and Dave Beck, representative of the International Brotherhood of Teamsters, to represent labor, and Mr. T. B. Wilson, vice-president of the Alaska Steamship Company, to represent the industry.

" 'This case is coming before this board as one of arbitration, and whatever the findings of this board is will be final. The Unions here were the original complainants, so they will be permitted to present their side of the story orally. Briefs have already been submitted. It is my understanding that they desire to also submit oral evidence and testimony. So I think without further remarks, I will turn the meeting over to Dean Coon, and he may proceed with the arbitration.'

"Following that the chairman asked the question as to the custom of procedure and Mr. Hope replied the unions first presented their case. The chairman asked if they had a spokesman, and the plaintiff herein stated that Mr. Carlson was their spokesman. Mr. Beck then asked: 'I wonder if we could first ask both sides if there is any dispute as to our decision being final and binding in this case before we hear any testimony?'

"The chairman asked if the spokesman of the manufacturers was present. Mr. Shoemaker replied that he was, and was requested to answer Mr. Beck's question. Mr. Shoemaker said: 'Our answer to that is in our brief. I represent the manufacturers listed in the brief.' Mr. Beck asked: 'As far as these people you represent are concerned you accept the decision as final and binding?' Mr. Shoemaker advised that was correct, and waived right of appeal, which was agreed to by Mr. Carlson."

The hearing was then continued to a later date, because one of the members of the board had been

called away from the city. No objection was made to the postponement, and, subsequently, there was another continuance, to which no objection was made. The agreement recited that the decision should be handed down within thirty days from the date the men returned to work. The decision, however, was not handed down until March 6, 1935. Subsequently, on the fifteenth of that month, the decision of the board was repudiated by the manufacturers. Thereafter, this action was brought to recover the difference between the wages which the men had been paid after their return to work until March 15, 1934, when the decision of the board was repudiated, and the amount of the wages fixed in the award.

 It is first contended that the arbitration proceeding was invalid, because it did not conform to the arbitration statute of this state, Rem. Rev. Stat., § 420 [P. C. § 7339] *et seq.* It will be admitted that the arbitration did not conform to that statute, but this does not necessarily mean that it was invalid. The statute referred to is wholly inapplicable to the adjustment of a labor dispute between an employer and employees. It contemplates such an arbitration that, when the award is filed with the clerk of the superior court, judgment may be entered thereon and execution issue. In view of the statute referred to, it has been held by this court that there was not, in this state, what is known as a common law arbitration. *Dickie Mfg. Co. v. Sound Const. & Engineering Co.,* 92 Wash. 316, 159 Pac. 129; *Puget Sound Bridge & Dredging Co. v. Frye,* 142 Wash. 166, 252 Pac. 546.

Even though the arbitration here did not, and could not, have conformed to the statute, and there is no common law arbitration in this state, it does not follow that there is no way by which employers and employees may settle their differences by mutually agree-

ing upon certain persons to make the adjustment. When the employees returned to work, in accordance with the agreement which had been executed, they furnished a consideration which was beneficial to the employers.

Thus far we have been using the term "arbitration," which was used in the agreement. But what was done here was neither a statutory arbitration nor a common law arbitration. It is what is referred to in the books as an appraisement. As a rule, what is called an arbitration does not relate to the future, and where it does so relate, it is not in the proper sense an arbitration, but only the ascertainment of some fact as a condition precedent to the bringing of a suit.

In *Cocalis v. Nazlides,* 308 Ill. 152, 139 N. E. 95, referring to arbitration and appraisement, it was said:

"As said in *Sebree v. Board of Education* [254 Ill. 438], *supra,* terms applicable to either are sometimes used without any clear difference in meaning although there is a plain distinction. There have been some cases in which what was called an arbitration related to the future, but they were not cases of arbitration in the proper sense but only the ascertainment of some fact as a condition precedent to the bringing of a suit."

It is an appraisement, and not an arbitration, where the arbitrators or the appraisers, whichever they may be called, act in the two-fold capacity of arbitrators and experts. In their character as experts, they base their decision, wholly or partly, on their personal experience and knowledge, and in some measure upon information, which would not be competent in itself as primary evidence.

In *Bangor Savings Bank v. Niagara Fire Ins. Co.,* 85 Me. 68, 26 Atl. 991, 35 Am. St. 341, 20 L. R. A. 650, it was said:

"It is not necessary to follow the different courts in their ingenious efforts to trace, for all cases, a line of distinction between a mere appraisement and an ordinary submission to arbitration. The result may be that such appraisers are properly considered arbitrators for some purposes but not in all respects. All are invested with *quasi* judicial functions, which must be discharged with absolute impartiality, without the improper interference of either party, or undue influence from any source. But appraisers may be said to act in the two-fold capacity of arbitrators and experts. In their character of experts they not only give effect to opinions based directly on their personal experience and knowledge, but also opinions founded in some measure upon information which may not be so direct and original as to be competent in itself as primary evidence."

This court has recognized that there exists in this state, in addition to the statutory arbitration, the common law appraisal. *Martin v. Vansant,* 99 Wash. 106, 168 Pac. 990, Ann. Cas. 1918D, 1147; *Wagner v. Peshastin Lumber Co.,* 149 Wash. 328, 270 Pac. 1032; *Peterson v. Granger Irr. Dist.,* 137 Wash. 668, 243 Pac. 847. The case now before us falls under the classification of an appraisement. So far as we are now concerned, there was an issue submitted to the board to determine a future fact, which was wages, the award of which should be retroactive, as above stated. It is also clear from the record that the members of the board were chosen with reference to their special qualifications for the service, and it was expected that they would use such appropriate, expert knowledge as they had in reaching a just conclusion.

The statement made by Mr. Hope at the opening of the hearing indicates that the decision to be rendered was not to be based solely upon the evidence submitted. Before the hearing, briefs had been submitted by the parties, setting forth their respective contentions.

This is referred to in the statement mentioned, and the view is expressed that there was a desire "to also submit oral evidence and testimony." It follows from what has been said upon this phase of the case that the arbitration proceeding was not invalid because it did not conform to the arbitration statute in this state.

The next contention is that the award was not made by the arbitrators designated in the agreement for submission. The agreement says that the difficulties and disputes between the parties

". . . shall be submitted for consideration and arbitration to the Pacific Northwest Regional Labor Board, having offices in Seattle, Washington."

The Pacific Northwest Regional Labor Board, with headquarters in Seattle, covered the states of Washington, Oregon, Idaho, Montana, and Alaska, and consisted of forty-one or forty-two members. There was in certain cities what is called a panel of the board, as in Seattle, where there were eleven or twelve of the members. It is the appellant's contention that the board of arbitrators who conducted the hearing were only to hear the testimony and then submit the evidence to the Seattle panel of eleven or twelve members who should consider the evidence and render the decision.

The agreement makes no reference to a panel. It refers to the regional board, having offices in that city. Obviously, it would be impractical to submit the dispute to the entire forty-one or forty-two members of the board, and it is not claimed that this was the intention.

The evidence upon what was the intention of the parties when the agreement was signed submitting the controversy to arbitration is directly in dispute. But it is not necessary to determine on which side lies the weight of the testimony, because, if the understanding

was as the appellant claims, it was departed from when the hearing opened. In the excerpt above quoted from the record of the proceeding, when the board first convened, with all the parties represented, it must have been definitely understood that the three members of the board then present were to conduct the hearing and render the decision. Mr. Hope, in his statement, says that it was agreed that the controversy should go into arbitration "before the Regional Labor Board, and this Board set up." He then says in selecting this board,

"We chose Dean S. J. Coon, of the Department of Economics of the University of Washington, as Chairman, and Dave Beck, representative of the International Brotherhood of Teamsters, to represent labor, and Mr. T. B. Wilson, vice-president of the Alaska Steamship Company, to represent the industry."

Mr. Hope then says the case is coming before "the board" as one of arbitration, which means the board of three members then present.

Apparently, in order that the matter might not be misunderstood, one member of the board inquired of the representatives of the parties present whether they would accept the decision of the board then present as being final and binding, and this was agreed to by the representatives of the parties. Having entered into this understanding, what the previous understanding may have been with reference to the submission to the Seattle panel, if any, is not material, provided the parties present, representing the various manufacturers, had a right to speak for them. Of this, we have no doubt. In any event, if the representatives present did not have a right to speak for the manufacturers, notice to them of what the board was proposing to do would be notice to their principals.

The next contention involves the time limited by the agreement within which a decision was to be

made. As already stated, the agreement provided that the decision was to be rendered within thirty days from the time the men returned to work. They returned to work November 14, 1934. The decision was not rendered until March 6, 1935. There was no objection made to the continuances of the board already mentioned. The appellant's final brief was not submitted until January 19, 1935, which was more than thirty days after the men returned to work. The question, really, on this phase of the case, is whether the decision was made within a reasonable time. The time fixed in the agreement had been waived by the conduct of the parties, and the award could be made within a reasonable period of time after the final submission. *In re Rexburg Inv. Co.,* 36 Ida. 552, 211 Pac. 552; *Mathews v. Miller,* 25 W. Va. 817.

The question, then, is whether there was an unreasonable delay in this case. Taking into consideration the nature of the controversy, the scope and extent of the evidence, we are of the view that the delay was not such as would justify the court in holding that the award was invalid because not rendered at an earlier date.

It is next contended that the member of the board who, Mr. Hope stated, was named thereon "to represent labor" was an advocate rather than an arbitrator, and that he dominated the board. No objection was made during the time that the matter was being heard and considered by the board. This matter was first brought forward in the letter of repudiation of the award. After considering the record, we find nothing therein from which it can be reasonably concluded that any one member of the board dominated the other two members, or that the member complained of was guilty of any misconduct.

The appellant makes a number of other contentions,

all of which have been considered, but in none of them do we find substantial merit. To undertake to consider and discuss all of these contentions would extend this opinion, now overlong, to an unreasonable length. With reference thereto, we shall do nothing more here than say, as already stated, that in none of them do we find substantial merit such as would call for a discussion.

The judgment will be affirmed.

MILLARD, C. J., HOLCOMB, BLAKE, and BEALS, JJ., concur.

