[No. 27687.   Department Two.   November 20, 1939.]

IN RE ARBITRATION PUGET SOUND BRIDGE & DREDGING
COMPANY, *Appellant,* v. LAKE WASHINGTON
SHIPYARDS, *Respondent.*[1]

[1]Reported in 96 P. (2d) 257.

Skeel, McKelvy, Henke, Evenson & Uhlmann, for appellant.

G. E. Steiner, for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court approving an arbitration award and granting recovery thereon.

Appellant, Puget Sound Bridge & Dredging Company, a corporation, employed respondent, Lake Washington Shipyards, a corporation, as contractor, to do certain work and furnish certain material in the repair and equipment of appellant's motor ship. After the work had been completed, a dispute arose between the parties as to the amount owing on the contract. Respondent claimed a total of $5,994.99; appellant admitted liability to the extent only of $2,895.

Being unable to reach a settlement, the disputants entered into a written agreement to arbitrate the matter. The agreement provided that two members of a certain firm of marine surveyors, who were appointed as arbitrators, should meet as soon as reasonably convenient, with power to determine the merits of the controversy and, upon the conclusion of the arbitration, to make and execute an award, to which the parties agreed to submit. The agreement contained no specific directions as to the manner in which

the arbitrators should proceed, but merely provided, generally, that the arbitration should be conducted in all respects in accordance with the laws of the state of Washington, except where the agreement, by express modification, indicated the contrary.

The arbitrators filed their oaths and shortly thereafter entered upon an investigation and inquiry, conducted as follows: They wrote to respondent requesting that it furnish them with a copy of its invoices, work orders, and any other details in support of its claim. At the same time, they wrote to appellant requesting it to furnish them with a copy of its specifications for the job in order that they might be informed as to what work and material had been ordered, and also advising appellant that they were asking respondent for a copy of its claim. Later, one of the arbitrators called on the appellant and was given copies of its correspondence, drawings, and invoices, with particular reference to the items in dispute. After the arbitrators had examined these papers, and following several visits to appellant's place of business, they asked that, in order to make an intelligent report, they might be permitted to inspect the vessel, which was then in dry dock at Portland. The request was granted, and arrangements for such inspection were made by appellant's president. He declined, however, to accompany the arbitrators on the trip and, instead, sent the company's superintendent, who was more familiar with the details of the work done by respondent.

An inspection of the ship was made, with the superintendent present. Respondent's invoices, which the arbitrators then had with them, were checked over, item by item, and compared with the work performed, and the objections then raised by the superintendent to any item were discussed and considered.

After their return from Portland, the arbitrators

made several trips to respondent's plant, where they interviewed the secretary and also the foreman of that company and audited its time and material slips pertaining to the job. Then, at the request of appellant's president, the arbitrators interviewed the owner of an independent machinery business, who was an expert in installing Diesel engines. They discussed with the expert each item of the invoices and considered his opinion thereon.

At none of these various investigations and in none of the conferences with either party was any representative of the other party present, although each was aware of the course which the arbitrators were pursuing.

At the conclusion of their investigation, the arbitrators prepared and filed in court their award, in which respondent was allowed the full amount of its claim less a credit of $259.36 in favor of appellant.

Other factual details upon which appellant further relies will be set forth as they become relevant to the argument.

After the award had been made and transmitted to the court, appellant filed its exceptions thereto, alleging that the arbitrators had misbehaved themselves in the case and that the award had been procured by undue means, in that (1) the arbitrators had failed to hold or conduct meetings at fixed or specified times according to law; and (2) although appellant had requested and had been promised the opportunity to attend such hearing and present testimony material to the dispute and to a proper settlement thereof, it had neither been notified of any such hearing nor been permitted to present its evidence.

The cause came on duly for trial before the court, and, after hearing the evidence upon the issue presented, the court overruled appellant's exceptions and

entered judgment on the award, from which this appeal was taken.

Appellant does not now contend that the arbitrators committed error of either fact or law, or that the award was procured through corruption. Its contention is that the arbitrators acted under a misconception of their duties; and that, as a result, appellant had not had its day in court.

In disposing of this case, we will consider: (1) The rights of interested parties with respect to a hearing in arbitration proceedings, and (2) whether, under the evidence in the case, appellant has been deprived of any of its legal rights.

Contrary to the practice and procedure in the vast majority of the states, this jurisdiction does not recognize or permit common law arbitration, one of the distinguishing features of which is that an agreement for such arbitration is revocable. In this state, the proceeding is wholly statutory, and the rights of the parties thereto are governed and controlled by statutory provisions. *Dickie Mfg. Co. v. Sound Const. & Eng. Co.*, 92 Wash. 316, 159 Pac. 129; *Suksdorf v. Suksdorf*, 93 Wash. 667, 161 Pac. 465; *Puget Sound Bridge & Dredging Co. v. Frye*, 142 Wash. 166, 252 Pac. 546; *Smith v. Department of Labor & Industries*, 176 Wash. 569, 30 P. (2d) 656; *Fisher Flouring Mills Co. v. United States* (Wash.), 17 F. (2d) 232. Compare, *Gord v. Harmon & Co.*, 188 Wash. 134, 61 P. (2d) 1294.

The procedure for arbitration is prescribed by Rem. Rev. Stat., §§ 420 to 430 [P. C. §§ 7339 to 7349], inclusive. We quote, directly or indirectly, those provisions which are particularly relevant to the question of the rights of the parties in such proceedings:

"All persons desirous to end, by arbitration, any controversy, suit, or quarrel, except such as respect

the title to real estate, may submit their difference to the award or umpirage of any person or persons mutually selected." (Rem. Rev. Stat., § 420 [P. C. §7339].)

The agreement to arbitrate must be in writing, signed by the parties. (Rem. Rev. Stat., § 421 [P. C. § 7340].) The arbitrators shall be duly sworn to "try and determine" the cause referred to them and make out a just award. (Rem. Rev. Stat., § 422 [P. C. § 7341].)

"The party against whom an award may be made may except in writing thereto for either of the following causes: —

"1. That the arbitrators or umpire misbehaved themselves in the case;

"2. That they committed an error in fact or law;

"3. That the award was procured by corruption or other undue means." (Rem. Rev. Stat., § 424 [P. C. § 7343].)

"If upon exceptions filed it shall appear to the said superior court that the arbitrators have committed error in fact or law, the court may refer the cause back to said arbitrators. . . ." (Rem. Rev. Stat., § 425 [P. C. § 7344].)

"Arbitrators, or a majority of them, shall have power,—

"1. To compel the attendance of witnesses duly notified by either party, and to enforce from either party the production of all such books, papers, and documents as they may deem material to the cause;

"2. To administer oaths or affirmations to witnesses;

"3. To adjourn their meetings from day to day, or for a longer time, and also from place to place, . . .

"4. To decide both the law and the fact . . . involved in the cause. . . ." (Rem. Rev. Stat., § 426 [P. C. § 7345].)

"The laws in force in this state relating to evidence and the manner of procuring the attendance of witnesses shall govern in arbitrations." (Rem. Rev. Stat., § 427 [P. C. § 7346].)

The award, when affirmed, has the force of a judgment. (Rem. Rev. Stat., § 430 [P. C. § 7349].)

The purpose of this legislation was to provide an expedient, inexpensive, and effective method of settling disputes. *School Dist. No. 5 v. Sage,* 13 Wash. 352, 43 Pac. 341. Its effect was to substitute arbitration for the preliminary part of a judicial hearing, and to make the decision of the arbitrators, when affirmed, a judgment. As expressed in *Dickie Mfg. Co. v. Sound Const. & Eng. Co.,* 92 Wash. 316, 159 Pac. 129, the board of arbitrators becomes a temporary court of justice, "a little court" set up by the parties themselves.

An arbitration proceeding is judicial in nature, and its basic requisite, like that of all English and American jurisprudence, is that persons whose rights and obligations are affected thereby have an absolute right to be heard and to present their evidence, after reasonable notice of the time and place of the hearing. 3 Am. Jur. 929-931, §§ 102, 103, 104; 2 R. C. L. 377-380, §§ 24, 25; 6 C. J. S. 198, 200, §§ 59-62; 5 C. J. 84, 86, §§ 175, 180; Sturges, Commercial Arbitrations and Awards, 381 *et seq.,* § 152.

The decisions of this court are in accord with these principles.

In *School Dist. No. 5 v. Sage,* 13 Wash. 352, 43 Pac. 341, the court in the following language indicated, though purely by way of dictum, that there must be such a hearing:

"It is not claimed that the arbitrators in this instance were guilty of corruption or misconduct or that they did not exercise their judgment honestly *after a full and fair hearing of both parties.*" (Italics ours.)

In *McDonald v. Lewis,* 18 Wash. 300, 51 Pac. 387, a judgment setting aside an arbitration award was affirmed because one of the litigants, who had ex-

hibited a quarrelsome demeanor, was directed by the arbitrators to leave the meeting and later, on his return, was refused a hearing or an opportunity to be heard.

In *Brown's Executors v. Farnandis,* 27 Wash. 232, 67 Pac. 574, the court, after referring to several instances of what it deemed to be irregularities on the part of the arbitrators, said:

"While arbitrators are not required to proceed with the formalities of a court, they must proceed in such a manner as to give a full hearing to each of the parties, not only upon the several items of the claim presented by himself, but also upon the claim of his adversary, and upon the evidence adduced in support of that claim. This they cannot do without hearing a party and his witness in the presence of the opposing party. Unless this right is waived by the party, either in the agreement of submission or by conduct amounting to a waiver, an award made under such circumstances is clearly void."

It must be conceded that the opinion in the case of *Hatch v. Cole,* 128 Wash. 107, 222 Pac. 463, contains some language which, apart from its context, seems to militate against the principle that opportunity for a full and fair hearing must be afforded. In that case, exceptions to an award were taken on the ground that a majority of the arbitrators had asserted, during the arbitral proceeding, that they would not be bound by the evidence, and that they had refused to listen to their dissenting associate whenever "he attempted to present any showing in favor of appellants." It was held that those matters could not be construed as misbehavior within the meaning of Rem. Comp. Stat., § 424 (now Rem. Rev. Stat., § 424), because there was no showing that the majority arbitrators "intentionally did any wrong." In answer to argument of counsel in that case, this court further said that it seemed to have

been the legislative intent to give arbitrators the power to arbitrarily decide disputes, for by the statute the arbitrators were given the right to determine both law and fact.

It may be that the *Hatch* case can be harmonized with our former decisions, above referred to, on the ground that, in the *Hatch* case, the court was not so much concerned with the question of a proper hearing, but rather with the question of the refusal of the arbitrators to properly weigh the evidence. The determination of the weight and sufficiency of the evidence is a matter within the judicial power of the arbitrators, and any error in that respect would be one of "fact or law," which must appear upon the face of the award. *School Dist. No. 5 v. Sage,* 13 Wash. 352, 43 Pac. 341; *Puget Sound Bridge & Dredging Co. v. Frye,* 142 Wash. 166, 252 Pac. 546.

However, we do not now subscribe to the broad statement made in the *Hatch* case that arbitrators have the power to arbitrarily decide disputes. Like any other judicial tribunal, they must decide upon the evidence adduced, after an opportunity for a full and fair hearing has been accorded to all the parties. Nor do we think that it is at all material whether the misbehavior of the arbitrators be intentional or not if, in fact, the parties have not had a proper hearing. An opportunity to be heard is a condition precedent to the arbitrators' authority to make the award. Furthermore, it could not be logically contended that the term "misbehaved," as used in subd. (1) of Rem. Rev. Stat., § 424, requires "an intention to do wrong," for, in that event, subd. (1) would be superfluous, since subd. (3) of § 424 provides that an exception may be taken when "the award was procured by corruption or other undue means."

In connection with what we have thus far said,

it must be remembered that arbitration is the result of, and subject to, the agreement of the parties litigant. Since it is a matter of contract, the parties may determine between themselves, beforehand, what issues are to be decided and whether the evidence is to be taken upon a hearing in the presence of both parties or is to be obtained, in whole or in part, through an informal inquiry by the arbitrators. If the agreement makes no specific provision in that respect, then under the statute, as we interpret it, the hearing must be had in the presence of both parties, so that each may have a full hearing upon the claim presented by himself and likewise upon the claim of his adversary. If, however, the parties agree, or consent, to the reception of evidence *ex parte* or through informal inquiry and investigation, they cannot thereafter be heard to say, as to such evidence, that they have not had their day in court.

Complementary to this absolute right to be heard, to which the parties are entitled in arbitration proceedings, is the right, found in the doctrine of waiver, to excuse its performance. That doctrine is one of the most familiar in the law, is of general application, and extends to rights and privileges of every character.

A right which one may enforce or insist upon, he may also repudiate or relinquish. Although the relinquishment must be voluntary and intentional, it may be either express or implied. It may arise from an express declaration of an intention not to claim the right, or it may be the result of acts or conduct which are inconsistent with the continued assertion of the right in question. The authorities cited above recognize the application of this doctrine to matters pertaining to the rights of persons concerned in arbitration proceedings. This court, in common with all others, has rec-

ognized it. *Brown's Executors v. Farnandis,* 27 Wash. 232, 67 Pac. 574. It follows, of course, that, if a person has waived a right, he cannot be said to have been legally deprived of it.

With these principles in mind, we approach the second, and crucial, question in the case, namely, whether, under the evidence, appellant has been deprived of any of its legal rights.

It will be noted that, when the arbitrators entered upon their course of informal and *ex parte* investigation and examination, it was with the full knowledge of both parties to the agreement. They voluntarily delivered to the arbitrators all the written data concerning the controversy, knowing the use that was to be made of it. Each of them submitted itself to *ex parte* examination without insisting that the other be present. Appellant designated its superintendent to accompany the arbitrators on their inspection of the vessel and to confer with them respecting the particular items in dispute. Moreover, appellant's president specifically requested the arbitrators to consult with a third person, an expert in the business of installing Diesel engines. That was done. Appellant cannot now, therefore, be heard to say that this method of procedure was contrary to the statute or the agreement, or was prejudicial to its rights.

Appellant's principal contention, however, is that, during the progress of the proceeding, it had requested permission to present its side of the case before a decision was made, but that such permission had never been accorded. Appellant's president testified that, upon one occasion, he talked to one of the arbitrators over the telephone and requested "that before he made a decision, I have an opportunity of presenting personally our side of the case." The arbitrator testified that he did not recollect any such re-

quest, but that, on the contrary, when he called on the president, he was directed to the appellant's superintendent, who was better versed in the details of the controversy. The president further testified that, on a subsequent occasion, he had stated over the telephone to the other arbitrator, "Now, if you make a final decision, I want an opportunity to talk to you personally about this matter." The second arbitrator admitted the making of such request, but said that he had thought that it was covered by the arrangements made with the president for the inspection of the vessel, upon which occasion, as already stated, the items in controversy were considered. On rebuttal, the president testified that his *understanding* was that the trip to Portland was merely for the purpose of inspecting the work which had actually been done on the vessel, and that he would subsequently have a chance to discuss controversial points. The arbitrators testified that they were told to get their information from the superintendent and, further, that they had considered everything that appellant had given them.

It is apparent that there was some misunderstanding between appellant's president and the arbitrators as to what appellant's president desired to do. Whether his request was made before or after the trip to Portland might, conceivably, have a bearing on the matter, but the record is not at all clear upon that question. The witnesses were before the trial court, and that tribunal was in a better position than are we to determine the weight of the evidence bearing on the issue as to whether appellant had been afforded a full opportunity to present its side of the case. It seems to us that the desire of appellant's president, as expressed in his request, was not to have a hearing at which both parties could be present and offer their evidence, under the scrutiny of their mutual observation, but, rather, to

discuss the situation informally with the arbitrators after they had familiarized themselves with the facts. From what has already been said, it is clear that the statute did not give him that right.

Our reading of the record convinces us, as it appears to have convinced the trial court, that appellant was given full opportunity to present everything necessary to a decision of the controversy. In any event, we are not, upon the record before us, justified in holding to the contrary.

The judgment is affirmed.

BLAKE, C. J., SIMPSON, GERAGHTY, and JEFFERS, JJ., concur.