[No. 69454-1. En Banc.]
Argued October 26, 2000. Decided January 25, 2001.

JOHN A. GODFREY, ET AL., *Petitioners*, v. HARTFORD CASUALTY INSURANCE COMPANY, *Respondent*.

---

*Carl Palmer* (of *McCune, Godfrey & Emerick, Inc., P.S.*), for petitioners.

*Charles C. Huber* and *Linda B. Clapham* (of *Lane Powell Spears Lubersky, L.L.P.*); and *William R. Hickman* (of *Reed McClure*), for respondent.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *Debra L. Stephens* on behalf of Washington State Trial Lawyers Association Foundation, amicus curiae.

TALMADGE, J.[*] — John and Gertrude Godfrey obtained a

[*] Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).

$165,000 arbitration award against their insurer, Hartford Casualty Insurance Company (Hartford) from a three-member arbitration panel in an uninsured/underinsured motorist (UIM) claim. Pursuant to the Hartford policy, the arbitration panel decision on liability was final, but either party could seek a trial de novo in court on damages if dissatisfied with the panel's decision. Where the parties submit all issues of liability and damages to an arbitration panel, Washington's arbitration act (Act), chapter 7.04 RCW, our code of arbitration, makes the trial de novo provision in Hartford's policy unenforceable as against public policy. We reverse the decision of the Court of Appeals, restore the judgment of the trial court, and award the Godfreys their attorney fees on appeal pursuant to RAP 18.1.

## ISSUES

1. Is the provision for a trial de novo in the Godfreys' Hartford insurance policy unenforceable because it violates the public policy embodied in the Act?

2. If the provision for a trial de novo is unenforceable, would Hartford be deprived of its right to a trial by jury pursuant to Washington Constitution article I, section 21?

3. If the Godfreys prevail, are they entitled to attorney fees for vindicating the arbitrators' decision?

## FACTS

John Godfrey was injured on a bus in Seattle when the door closed on his shoulder as he was attempting to exit. Metro King County Transit is a self-insurer, so the Godfreys claimed coverage under the UIM provision in his Hartford liability insurance policy.[1] Hartford resisted, and the Godfreys filed an action in superior court for a declaratory

---

[1] A self-insurer is not insured for UIM considerations because RCW 48.01.040 defines insurance as "a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies." *See Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wn.2d 669, 674, 852 P.2d 1078 (1993).

judgment as to coverage or, in the alternative, to compel arbitration. The Godfreys' complaint alleged application of the Act. The parties eventually stipulated to a stay of the superior court proceedings and to arbitration of the Godfreys' claims.

The arbitration occurred under the auspices of a private arbitration service, Heavey Arbitration and Mediation Service. The arbitrators were Ed Heavey, John Patrick Cook, and Murray Kleist. The arbitrators awarded the Godfreys $165,000.

Following the award, the Godfreys moved to confirm the arbitration award, RCW 7.04.150, and to reduce the award to judgment. RCW 7.04.190. Hartford opposed the motion on the ground it was entitled to a trial de novo pursuant to the arbitration provision of its insurance policy with the Godfreys, which provided:

> Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:
>
> 1. Whether the insured is legally entitled to recover damages; and
>
> 2. The amount of damages, *unless either party demands the right to a trial within 60 days of the arbitrators' decision.*
>
> If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

Clerk's Papers at 178 (emphasis added). Hartford moved to lift the stay of proceedings in the trial court and to have the matter placed back on the trial calendar, and the trial court granted Hartford's motion.

Insofar as Hartford invoked a provision of the insurance policy not previously in dispute, the Godfreys moved to amend their complaint seeking a declaration that the trial de novo provision was void and unenforceable. The trial court granted leave to amend.

The Godfreys then moved for summary judgment on their claim the trial de novo provision was void and unenforce-

able, and for an order confirming the award and reducing it to a judgment. They also asked for attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), arguing Hartford's refusal to permit entry of the arbitration award compelled them to litigate to obtain the full benefit of their insurance contract. They confined their fee request to the expenses postdating Hartford's motion for a trial de novo.

The trial court granted Godfrey's motion for summary judgment, and for attorney fees, citing a Division Three case directly on point. *Petersen v. United Servs. Auto. Ass'n*, 91 Wn. App. 212, 955 P.2d 852 (1998). The trial court's order declared the trial de novo provision of Hartford's policy violative of the Act, and held Hartford had waived its right to a jury trial by agreeing to arbitrate. The trial court confirmed the arbitration award of $165,000 and ordered entry of judgment. The trial court also awarded Godfrey $10,000 in attorney fees. Hartford appealed.

The Court of Appeals reversed in a published split decision. *Godfrey v. Hartford Cas. Ins. Co.*, 99 Wn. App. 216, 993 P.2d 281 (2000). The majority of the court held the trial de novo provision did not violate any public policy, stating where the parties to the insurance contract have agreed in advance to submit to a trial de novo after arbitration should either party demand it, there is no reason or authority for preventing the trial from proceeding. The Court of Appeals characterized the arbitration provision as a form of non-binding arbitration, holding the arbitration provision was "not intended as a final and binding process." *Id.* at 221. Godfrey petitioned for review, which we granted.

ANALYSIS

A. Arbitration

■■ Washington courts have repeatedly expressed judicial approval of the policy underlying arbitration of disputes. In *Thorgaard Plumbing & Heating Co. v. King County*, 71 Wn.2d 126, 131-32, 426 P.2d 828 (1967), for

example, we said: "The very purpose of arbitration is to *avoid* the courts insofar as the resolution of the dispute is concerned. . . . arbitration is a substitute for, rather than a mere prelude to, litigation." We have expressed a public policy favoring arbitration:

> Encouraging parties voluntarily to submit their disputes to arbitration is an increasingly important objective in our ever more litigious society. This objective would be frustrated if a trial court were permitted to conduct a trial de novo when it reviews an arbitration award. Arbitration is attractive because it is a more expeditious and final alternative to litigation.

*Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995). *See also* numerous cases cited at *Davidson v. Hensen*, 135 Wn.2d 112, 117-18, 954 P.2d 1327 (1998).

Indeed, the Legislature and the courts have expressed approval of a variety of forms of alternate dispute resolution (ADR) ranging from trials by referees (whose judgments are appealable), chapter 4.48 RCW; arbitration, chapter 7.04 RCW (where trial de novo is not allowed and but limited judicial review is authorized); mandatory civil arbitration of smaller civil cases (where the arbitrator's award may be tried de novo in superior court); arbitration of parenting plan provisions, RCW 26.09.184(3) (where the statute allows de novo review of the arbitral decision by the superior court); to mandatory mediation of medical malpractice claims, RCW 7.70.100-.130. *See generally* Philip A. Talmadge, *Alternative Dispute Resolution Comes of Age in Washington*, 53 WASH. STATE BAR NEWS, July 1999, at 23. Parties are free to agree upon a variety of ADR mechanisms under Washington law to address their disputes.[2]

In this case, the parties agreed by contract to resolve their disputes over UIM coverage by arbitration.[3] Essen-

---

[2] Chapter 48.22 RCW, the statute on UIM coverage, does not mandate arbitration of UIM disputes. The parties could utilize traditional dispute resolution in our civil justice system, or other forms of ADR such as mediation or trial by referee to resolve UIM disputes.

[3] Hartford and Godfrey could have agreed to arbitrate specific liability questions only; they could have agreed to arbitrate liability and leave the setting of damages

tially, Hartford asserts, and the Court of Appeals agreed, parties in Washington may conduct a private arbitration, and subsequently, if one of the parties disagrees with the result, that party may then bring the dispute, in whole or in part, to a trial court and resolve it there as if there had been no arbitration previously. The Court of Appeals characterized the private arbitration here as "nonbinding."

Hartford argues we should enforce the UIM arbitration provision in the insurance contract as written and allow a trial de novo after arbitration as to all or some of the issues arbitrated if one of the parties does not like the result. By contrast, the Godfreys contend the trial de novo provision in Hartford's UIM provision violates the public policy of the Act.

We have said on numerous occasions arbitration in Washington is exclusively statutory: "Contrary to the practice and procedure in the vast majority of the states, this jurisdiction does not recognize or permit common law arbitration . . . . In this state, the proceeding is wholly statutory and the rights of the parties thereto are governed and controlled by statutory provisions." *Puget Sound Bridge & Dredging Co. v. Lake Wash. Shipyards*, 1 Wn.2d 401, 405, 96 P.2d 257 (1939); *Dickie Mfg. Co. v. Sound Constr. & Eng'g Co.*, 92 Wash. 316, 318, 321, 159 P. 129 (1916) ("In the face of so complete an act as ours we are clear, and find this proper occasion to say, that common law arbitration does not exist in this state and that the plain purpose of our legislation was to clear much unsettled practice by codifying arbitration. . . . Common law arbitration has ceased to exist."); *Puget Sound Bridge & Dredging Co. v. Frye*, 142 Wash. 166, 177, 252 P. 546 (1927) ("Construing these statutes, this court has held that there is in this state no such thing as a common law arbitration; that the proceeding is wholly statutory; and that the rights of the parties to the proceeding are governed and controlled by the statute."), *quoted with approval in Boyd v. Davis*, 127

---

to the court system. But Hartford did not seek such provisions in its agreement with Godfrey.

Wn.2d 256, 268, 897 P.2d 1239 (1995).

■ Washington's Act amounts to a "code of arbitration" governing the conduct of arbitration in Washington, unless a more specific statutory enactment on arbitration applies.[4] *Davidson v. Hensen*, 135 Wn.2d 112, 117, 954 P.2d 1327 (1998); *Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 495, 946 P.2d 388 (1997); *N. State Constr. Co. v. Banchero*, 63 Wn.2d 245, 249, 386 P.2d 625 (1963).

■ ■ The parties are free to decide if they want to arbitrate. By their agreement to arbitrate, the parties may control the issues to be arbitrated. RCW 7.04.010. As we noted in *Price*, the reasons for this rule are as follows:

> "(a) that parties are free to decide whether they wish to use arbitration in lieu of the judicial process, (b) that they may agree on what matters they wish to submit to an arbitrator, (c) that a party is only required to arbitrate those matters which are the subject of such an arbitration agreement, and (d) that the arbitration clause in the uninsured motorist coverage terms is a clear and unambiguous agreement to submit certain specified questions—and only disputes involving those questions—to arbitration."

*Price*, 133 Wn.2d at 496 (quoting 2 ALAN I. WIDISS, UNINSURED AND UNDERINSURED MOTORIST INSURANCE § 24.2, at 265 (2d ed. 1992)).

While the parties are free to decide by contract whether to arbitrate, and which issues are submitted to arbitration, once an issue is submitted to arbitration, however, Washington's Act applies. That code of arbitration does not contemplate nonbinding arbitration.[5]

---

[4] An example of a more specific enactment is chapter 7.06 RCW on mandatory civil arbitration of small civil claims.

[5] There is one exception to the rule. RCW 7.04.010 excludes certain types of arbitrations:

> The provisions of this chapter shall not apply to any arbitration agreement between employers and employees or between employers and associations of employees, and as to any such agreement the parties thereto may provide for any method and procedure for the settlement of existing or future disputes and controversies, and such procedure shall be valid, enforceable and irrevocable save upon such grounds as exist in law or equity for the revocation of any agreement.

Under the Act, there is no such thing as a trial de novo. Review in the trial court is limited to vacation of the award[6] or modification or correction of the award.[7] "Wash-

---

In *Department of Social and Health Services v. State Personnel Board,* 61 Wn. App. 778, 812 P.2d 500 (1991), the Court of Appeals had to decide what rule to apply to review of an arbitration decision when the arbitration occurred outside the purview of the Act because it involved employers and employees. The Court held common law principles applied "to resolve a problem where the arbitration statute is also inapplicable." *Id.* at 784.

[6] RCW 7.04.160 provides:

In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:

(1) Where the award was procured by corruption, fraud or other undue means.

(2) Where there was evident partiality or corruption in the arbitrators or any of them.

(3) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made.

(5) If there was no valid submission or arbitration agreement and the proceeding was instituted without either serving a notice of intention to arbitrate, as provided in RCW 7.04.060, or without serving a motion to compel arbitration, as provided in RCW 7.04.040(1).

An award shall not be vacated upon any of the grounds set forth under subdivisions (1) to (4), inclusive, unless the court is satisfied that substantial rights of the parties were prejudiced thereby.

Where an award is vacated, the court may, in its discretion, direct a rehearing either before the same arbitrators or before new arbitrators to be chosen in the manner provided in the agreement for the selection of the original arbitrators and any provision limiting the time in which the arbitrators may make a decision shall be deemed applicable to the new arbitration and to commence from the date of the court's order.

[7] RCW 7.04.170 provides:

In any of the following cases, the court shall, after notice and hearing, make an order modifying or correcting the award, upon the application of any party to the arbitration:

(1) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing or property, referred to in the award.

(2) Where the arbitrators have awarded upon a matter not submitted to them.

ington courts have given substantial finality to arbitrator decisions rendered in accordance with the parties' contract and RCW 7.04. The shorthand description for this policy of finality is that judicial review of an arbitration award is limited to the face of the award." *Davidson v. Hensen*, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998). The parties to an arbitration contract are not free to craft a "common law" arbitration alternative to the Act. We have clearly indicated any efforts to alter the fundamental provisions of the Act by agreement are inoperative. *See, e.g., Barnett v. Hicks*, 119 Wn.2d 151, 829 P.2d 1087 (1992) (parties to a chapter 7.04 RCW arbitration could not stipulate to appellate review of arbitral decision beyond the terms set forth in that statute); *Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995) (trial court reviewing arbitral award may not conduct a trial de novo); *Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 946 P.2d 388 (1997) (trial court lacked jurisdiction in proceeding under RCW 7.04.150 to entertain issue beyond the scope of the arbitrators' decision).

The rationale for the application of the Act in such an exclusive fashion is plain. The parties in this case, as in all arbitrations, affirmatively invoke the jurisdiction of Washington courts to facilitate and enforce the arbitration. Hartford's policy language invokes state law: "Local rules of law as to procedure and evidence will apply." Under the Act, the arbitration panel may petition a court to compel the attendance of witnesses, a power the nonjudicial arbitrators obviously do not have. RCW 7.04.110. The arbitrators may petition a court to attach property "as it may deem necessary for the preservation of the property or for securing satisfaction of the award." RCW 7.04.130. An arbitration proceeding may result in the application of the ultimate power of the State, the entry of a judgment upon the award. RCW 7.04.190. Once the judgment is entered on the

---

(3) Where the award is imperfect in a matter of form, not affecting the merits of the controversy. The order must modify and correct the award, as to effect the intent thereof.

judgment rolls, the victorious party may invoke the power of the State to execute upon that judgment.

To conduct the arbitration that occurred in this case, the parties sought arbitration on both liability and damages; they brought into play the jurisdiction and power of the courts as set forth in the Act. By so doing, they have activated the entire chapter and the policy embodied therein, not just the parts that are useful to them, such as ability to reduce the award to an enforceable judgment. Once they decided both liability *and* damages would be arbitrated, they were not free to say the arbitration as to liability was binding, but as to damages, it was not. Indeed, we choose not to condone what amounts to a waste of judicial resources. Arbitration is intended to be final; parties agree to waive their right to have their disputes resolved in the court system. They cannot submit a dispute to arbitration only to see if it goes well for their position before invoking the courts' jurisdiction. As we said in *Barnett*, 119 Wn.2d at 161, "Litigants cannot stipulate to jurisdiction nor can they create their own boundaries of review." *See also Barnett*, 119 Wn.2d at 160 (policy of Act would be frustrated by trial de novo of arbitration awards).[8]

Because the parties here agreed to arbitrate issues of liability and damages, we enforce the arbitrator's award rather than invalidate the arbitration clause in its entirety. The mandate of chapter 7.04 RCW was unambiguous at the time these parties entered into their contract. The submission of issues to the arbitrators was irrevocable in the absence of one of the statutory grounds for revocation in RCW 7.04.010; a party cannot unilaterally withdraw an issue from arbitration. *Thorgaard Plumbing*, 71 Wn.2d at 134. The arbitral award was enforceable. *See Barnett*, 119 Wn.2d at 153, 163.

---

[8] To the extent they purport to permit the parties to an arbitration agreement to fundamentally alter the provisions of chapter 7.04 RCW by agreement, *Van Horne v. Watrous*, 10 Wash. 525, 39 P. 136 (1895) and *Keith Adams & Associates v. Edwards*, 3 Wn. App. 623, 477 P.2d 36 (1970) are disapproved.

## B. Right to a Jury Trial

Hartford argues the trial court decision voiding the trial de novo provision deprived it of a constitutional right to a trial by jury, supporting its argument by scholarly citations to Thomas Jefferson and a law review article on the constitutional history of the Seventh Amendment to the United States Constitution. The Court of Appeals did not reach this contention because it decided in Hartford's favor on other grounds. Hartford has renewed its claim here, however.

Hartford's claim of a right to a jury trial is undercut by the policy it drafted. The insurance policy Hartford sold to the Godfreys says if either party cannot agree as to the damages owed under the UIM coverage, or if there is any liability at all for damages, "either party may make a written demand for arbitration. . . . [A]rbitration will take place in the county in which the insured lives." By this provision, Hartford contractually bound itself to arbitrate should the Godfreys demand arbitration. Hartford asserts its agreement to arbitrate does not constitute a waiver of a jury trial because it was entitled to a jury trial by the terms of the insurance contract.

Hartford is wrong. "The right to a jury trial may be waived." *State v. Valdobinos*, 122 Wn.2d 270, 288, 858 P.2d 199 (1993). While we narrowly construe waivers of the jury right, *Wilson v. Horsley*, 137 Wn.2d 500, 511, 974 P.2d 316 (1999), waiver may occur by the failure to timely request a jury, *Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 563, 800 P.2d 367 (1990), or even by the failure of a party to properly participate in an arbitration, *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 413, 936 P.2d 1175 (1997). But waiver of the right to jury trial "must be voluntary, knowing, and intelligent." *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). By agreeing in the insurance policy it drafted to arbitrate its dispute with the Godfreys, Hartford voluntarily submitted itself to the jurisdiction of the Act, and it waived the right to a trial by jury. *Petersen*, 91 Wn. App. at 217 n.2.

## C. Attorney Fees

 The final issue before us is the Godfreys' request for attorney fees at trial and on appeal. This is a close question. "An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees . . . ." *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 54, 811 P.2d 673 (1991). This is an equitable exception to the American Rule on attorney fees. *McRory v. N. Ins. Co.*, 138 Wn.2d 550, 554, 980 P.2d 736 (1999).

The Godfreys, following *Petersen*, assert they are entitled to attorney fees because when Hartford opposed entry of the arbitration award as a judgment, and claimed the right to a trial de novo, they had to amend their complaint and litigate those issues. They characterize this postarbitration litigation as proceedings concerning "the validity of the policy." Godfrey's Suppl. Br. at 13. In awarding attorney fees under *Olympic Steamship*, the Court of Appeals in *Petersen* characterized the identical proceedings there as concerning "the right to obtain a benefit, i.e., payment on the arbitration award, under her insurance contract." *Petersen*, 91 Wn. App. at 218.

Hartford relies on *Dayton v. Farmers Insurance Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994), which disallowed attorney fees in a UIM arbitration because the dispute there was merely over the value of the claim. Hartford asserts the present dispute is essentially over the value of the claim.

We believe this case is more akin to a dispute over the vindication of policy provisions to which the insured is entitled (for which fees may be awarded) than a dispute over the amount of coverage (for which fees are not available). While it is true Hartford does not agree with the arbitral award of $165,000, the dispute is not whether that amount should be less, but whether Hartford is entitled to a trial de novo to argue it should be less. In other words, the dispute is over whether the Godfreys can receive the benefit of their insurance contract by entry of the arbitral award as a judgment in their favor. This situation is like that present

in *McGreevy v. Oregon Mutual Insurance Co.*, 128 Wn.2d 26, 904 P.2d 731 (1995) where we allowed a fee award in a UIM case. The parties there contested the question of "stacking" of UIM coverages. The parties in *McGreevy* were certainly interested in the amount of damages to be allowed, but the fundamental issue was one of an insured being compelled to sue to vindicate a key policy provision, albeit one that affected damages.[9] The Godfreys have had to litigate their right to entry of judgment on the arbitral award, and are therefore entitled to attorney fees.

## CONCLUSION

Arbitration in Washington is entirely a creature of statute under the purview of the Act. Where the parties submitted all UIM liability and damages issues to the arbitrators, the provision in the Hartford policy calling for a trial de novo on damages after the arbitration violates chapter 7.04 RCW, and is therefore unenforceable. Hartford waived its right to a jury trial by agreeing in its policy to arbitration. The Godfreys are entitled to their attorney fees because they had to litigate to obtain the benefit of their insurance contract.

We reverse the Court of Appeals and reinstate the trial court's judgment in favor of the Godfreys. We award attorney fees on appeal to the Godfreys. RAP 18.1.

SMITH, JOHNSON, SANDERS, and BRIDGE, JJ., concur.

MADSEN, J. (concurring/dissenting) — I agree with the majority's analysis and conclusions except for its holding that attorney fees are awardable to John and Gertrude

---

[9] The concurrence/dissent suggests *McGreevy* involved a pure coverage dispute rather than a dispute over the amount of damages. The concurrence/dissent further asserts this case, at its core, involves a dispute over the amount of damages. This analysis is far too simplistic. Like this case, an interpretation of policy provisions was at stake in *McGreevy*. If we had ruled the antistacking provision in *McGreevy* applied, the amount of damages recoverable there would have been dramatically smaller. Here, we rule in the Godfreys' favor on the arbitrability of damages. This dispute pertains more plainly to arbitration, not the amount of damages.

Godfrey. The litigation over the insurance policy language providing for a trial de novo on damages occurred because Hartford Casualty Insurance Company wanted a second bite of the apple—a chance to try to reduce the value of the Godfreys' claim. Because the gravamen of the dispute is over the value of the claim, not coverage, I would hold that attorney fees are not awardable to the Godfreys.

In *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 54, 811 P.2d 673 (1991), the court concluded that "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees . . . ." The court soon clarified this rule, holding that if a dispute is over coverage, such fees are awardable, but if the dispute is over the value of the claim under the policy, they are not. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280-81, 876 P.2d 896 (1994). The majority says that the dispute here is not over coverage, but is instead "over whether the Godfreys can receive the benefit of their insurance contract by entry of the arbitral award as a judgment in their favor," majority at 899, and that the dispute here is not over whether the arbitration award should be less, but whether the insurer is entitled to a trial de novo to argue that it should be less. Majority at 899-900. I disagree.

As noted, in *Dayton* the court explained that while attorney fees are awardable where the insured has "compelled [the insurer] to honor its commitment to provide coverage[,]" they are not awardable if the dispute is over the value of the claim. *Dayton*, 124 Wn.2d at 280. Hartford does not dispute that there is coverage. Thus, just as in *Dayton*, there is no dispute about coverage.

Rather than apply *Dayton* in a forthright manner, the majority makes a distinction between seeking to reduce the arbitration award and seeking to employ the policy provision to enable a second hearing to try to reduce the arbitration award. Instead of the majority's hypertechnical distinction, the better approach is found in *Mahler v. Szucs*, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998). There,

902

the court characterized the coverage/value question as going to "the essential gravamen of the dispute[,]" i.e., "the principal focus of th[e] dispute . . . ." *Id.* at 431-32. There is no question that the essential gravamen of the dispute here, the principal focus of the dispute, is whether Hartford is entitled under the contract to challenge the amount of damages in court after that value has already been determined in arbitration proceedings. The value of the claim, not coverage, is the essential matter in dispute.[10]

The majority's approach abrogates the distinction drawn in *Dayton* and significantly broadens the *Olympic Steamship* rule. It opens the door to argue that almost any dispute over insurance language involves a question of obtaining the benefits of the insurance contract, and thus is a matter of coverage leading to *Olympic Steamship* fees.

The majority is in error when it says that the present case is like *McGreevy v. Oregon Mutual Insurance Co.*, 128 Wn.2d 26, 904 P.2d 731 (1995). While the majority says that the fundamental issue in *McGreevy* was "one of an insured being compelled to sue to vindicate a key policy provision, albeit one that affected damages[,]" majority at 900, that is certainly not the analysis in *McGreevy*. The specific question in *McGreevy* was whether the antistacking provision in an automobile insurance policy that covered four vehicles prohibited accumulation of underinsured motorist benefits provided for each covered vehicle. Thus, *McGreevy* involved a situation where the insurer "admitted there was some coverage but disputed the scope of the coverage. Coverage

---

[10] Hartford also argues that *Olympic Steamship* fees are not awardable in the underinsured motorist context, relying on *Dayton v. Farmers Insurance Group*, 124 Wn.2d 277, 281, 876 P.2d 896 (1994). This court has since acknowledged, though, that if coverage questions were submitted to arbitration where UIM benefits are involved, *Olympic Steamship* fees would be appropriate. *Price v. Farmers Ins. Co.*, 133 Wn.2d 490, 498 n.6, 946 P.2d 388 (1997). It necessarily follows that there is no absolute bar to *Olympic Steamship* fees in the UIM setting. This is in keeping with the coverage/value distinction in *Dayton*, and reflects the underpinnings to the *Olympic Steamship* rule, especially the disparity of bargaining power between an insurer and the insured, and the aim in acquiring an insurance contract to avoid vexatious, lengthy, costly litigation. *McGreevy v. Or. Mut. Ins. Co.*, 128 Wn.2d 26, 35, 904 P.2d 731 (1995); *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991).

disputes include both cases in which the issue of *any* coverage is disputed and cases in which 'the *extent* of the benefit provided by an insurance contract' is at issue." *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 147, 930 P.2d 288 (1997) (emphasis added) (quoting *McGreevy*, 128 Wn.2d at 33). Clearly, it was coverage—the scope, or extent of coverage provided—that was in dispute in *McGreevy*, as this court observed in *Leingang*. Contrary to the majority's claim that vindication of a policy provision was the issue leading to an award of attorney fees, the extent of coverage was precisely the core of the dispute in *McGreevy* and was the reason why attorney fees were awardable.

In this case the amount of damages that Hartford must pay, not coverage or the scope of coverage, is the core of the dispute. It is true that the insurance policy provision providing for a trial de novo is the instrument Hartford has used to assert that the damages issue may be revisited in a court proceeding, but the value of the claim is the heart of the dispute.

Because the majority has failed to follow *Dayton* and its progeny, and has expanded the *Olympic Steamship* rule to encompass nearly any dispute about insurance policy language, I dissent from its holding that attorney fees are awardable to the Godfreys.

I concur except as to the award of attorney fees.

ALEXANDER, C.J., and BRIDGEWATER and GUY, JJ. Pro Tem., concur with MADSEN, J.