[No. 64439-4-I.    Division One.    June 20, 2011.]

AMY RIMOV, *Respondent*, v. MARY SCHULTZ ET AL., *Appellants*.

*Mary E. Schultz*, pro se.

*Amy L. Rimov*, pro se.

*Philip A. Talmadge* and *Peter Lohnes* (of *Talmadge/ Fitzpatrick*), for appellants.

*Ross P. White, Matthew W. Daley,* and *William M. Symmes* (of *Witherspoon Kelley Davenport & Toole PS*), for respondent.

¶1 APPELWICK, J. — Rimov filed a complaint for damages and an equitable distribution of property accumulated during her relationship with Schultz. Schultz sought dismissal on the grounds that the complaint was barred by Washington's uniform arbitration act, chapter 7.04A RCW. The trial court denied the motion. Because the parties did not make an agreement to arbitrate, they did not trigger application of the arbitration statute. We affirm.

## FACTS

¶2 Amy Rimov and Mary Schultz are attorneys in Spokane. Rimov worked as an associate in Schultz's law firm. Rimov and Schultz also had a personal relationship. During their relationship, Rimov and Schultz signed a written release of claims that purportedly resolved any disputes between them. In late 2007, the personal relationship ended. In February 2008, the professional relationship ended.

¶3 Rimov then asserted that the release was invalid and retained counsel to represent her in a potential claim against Schultz. Rimov and Schultz agreed to put the issue of the validity of the release before a retired superior court judge. Both parties submitted evidence, and on November 13, 2008, former Judge Mike Donohue issued a "DECISION ON NON-BINDING ARBITRATION," concluding that the release was valid, binding, and enforceable.

¶4 Rimov filed a complaint, amended in August 2009, against Schultz, alleging a meretricious relationship, seeking an equitable distribution of the property accumulated during their relationship, and raising additional claims related to her employment at Schultz's law firm.[1] Schultz filed a motion to dismiss under CR 12(b), arguing that the complaint was barred by Washington's uniform arbitration act (WUAA), chapter 7.04A RCW. Rimov responded that she did not agree to binding arbitration and characterized the

---

[1] The claims relating to Rimov's employment at Schultz's law firm were separately dismissed with prejudice and are not the subject of this appeal.

process she and Schultz agreed to as a mock summary judgment sought for the purpose of fostering the parties' efforts at settlement. Each party submitted numerous declarations and other pieces of evidence in support of her pleadings.

¶5 The trial court denied Schultz's motion to dismiss, concluding that there was no agreement to arbitrate, and accordingly, that the WUAA was inapplicable. The court then denied Schultz's motion to reconsider. Schultz appeals.

## DISCUSSION

### I. *Standard of Review*

■ ■ ¶6 Whether dismissal was appropriate under CR 12(b)(6) is a question of law that this court reviews de novo. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). Interpretation of a statute is a question of law reviewed de novo. *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 488, 200 P.3d 683 (2009).

### II. *The Arguments*

¶7 The trial court concluded no agreement to arbitrate existed between Schultz and Rimov. Schultz argues the parties entered into an arbitration agreement. She claims that nonbinding arbitration is not recognized as a matter of law under *Godfrey v. Hartford Casualty Insurance Co.*, 142 Wn.2d 885, 16 P.3d 617 (2001), and that the procedure used here must be treated as a binding arbitration. She contends that post hoc recharacterization of an agreement to arbitrate as something else is precluded by *Dahl v. Parquet & Colonial Hardwood Floor Co.*, 108 Wn. App. 403, 30 P.3d 537 (2001), and *Barnett v. Hicks*, 119 Wn.2d 151, 829 P.2d 1087 (1992). She finally argues that, because the parties agreed to arbitrate, Rimov's challenge to the arbitration agreement is precluded as untimely under RCW 7.04A.060 and that any appeal of the arbitrator's award is untimely under RCW 7.04A.230. She seeks reversal of the trial court's denial of her CR 12(b)(6) motion and remand with instructions to dismiss.

¶8 Rimov argues the parties agreed to a nonbinding process, not to an arbitration, and that *Godfrey* does not prohibit such an agreement as a matter of law. Therefore, she argues the trial court should be affirmed.

¶9 The validity of an agreement to arbitrate must be challenged before the commencement of the arbitration hearing. RCW 7.04A.230(1)(e). The parties do not dispute that they entered into an agreement. If that agreement is an arbitration agreement, it is clear that a challenge to the agreement is untimely and any appeal of any decision of the arbitrator is untimely. Thus, if the parties agreed to arbitrate, Schultz is entitled to the relief sought. If the parties did not agree to arbitrate, Rimov is correct and the trial court should be affirmed.

### III. *The Law of Arbitration*

■ ¶10 Arbitration in Washington is a statutorily recognized special proceeding controlled by the WUAA.[2] *Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 495, 946 P.2d 388 (1997). Washington courts have expressed a public policy favoring arbitration. *Godfrey*, 142 Wn.2d at 892. The Supreme Court has recognized that " '[t]he very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned. . . . [A]rbitration is a substitute for, rather than a mere prelude to, litigation.' " *Id.* (emphasis omitted) (second alteration in original) (quoting *Thorgaard Plumbing & Heating Co. v. King County*, 71 Wn.2d 126, 131-32, 426 P.2d 828 (1967)). Accordingly, Washington courts confer substantial finality on decisions of arbitrators rendered in accordance with the parties' contract and the arbitration statute. *Davidson v. Hensen*, 135 Wn.2d 112, 118, 954 P.2d 1327 (1998); *Carpenter v. Elway*, 97 Wn. App. 977, 984, 988 P.2d 1009 (1999); *see also Boyd v. Davis*, 127 Wn.2d 256, 262, 897 P.2d 1239 (1995) ("Arbitration is

---

[2] The current statutory scheme, codified as chapter 7.04A RCW, was adopted in 2005 when the legislature replaced the previous version with the revised uniform arbitration act. LAWS OF 2005, ch. 433; UNIF. ARBITRATION ACT (UAA) (2000), 7 pt. 1A U.L.A. 1, prefatory note at 3 (2009).

attractive because it is a more expeditious and final alternative to litigation.").[3]

■■ ¶11 "Arbitration traces its existence and jurisdiction first to the parties' contract and then to the arbitration statute itself." *Price*, 133 Wn.2d at 496 (footnote omitted). Parties are free to decide if they want to arbitrate. *Godfrey*, 142 Wn.2d at 894. The parties may also decide the issues to be submitted to arbitration. *Id.* Once an issue is submitted to arbitration, the statute controls. *Id.*

■ ¶12 But, not every nonjudicial process is binding, and not every nonjudicial process is arbitration. An agreement to a nonjudicial dispute resolution process, the result of which is not binding upon the participants and not enforceable in a court of law, is by definition not an arbitration under the statute.[4] The court decides whether a

---

[3] The WUAA is based upon the revised UAA, drafted by the National Conference of Commissioners on Uniform State Laws. UAA, 7 pt. 1A U.L.A. 1, prefatory note at 3. The drafters of the UAA intended to ensure finality of arbitration. In the prefatory note to the UAA, the drafters stated, "[I]n most cases parties intend the decisions of arbitrators to be final with minimal court involvement unless there is clear unfairness or a denial of justice. This contractual nature of arbitration means that the provision to vacate awards in Section 23 is limited." *Id.* The drafters discussed extensively the reasons for ensuring finality in their comments to section 23, explaining that permitting parties to contract for more judicial review would eviscerate arbitration as a true alternative to traditional litigation, make the process more expensive and time consuming, and risk losing the court's support of arbitration as an alternative to the judicial process. UAA § 23 cmt. B(1), 7 pt. 1A U.L.A. 79-80.

We note that this court has previously relied on the comments in interpreting the UAA. *Townsend v. Quadrant Corp.*, 153 Wn. App. 870, 878-79 & n.7, 880, 224 P.3d 818 (2009), *review granted*, 169 Wn.2d 1021, 238 P.3d 504 (2010). In that case we noted that to carry out RCW 7.04A.901's mandate to promote uniformity in interpreting the UAA, it is appropriate to consider the comments when interpreting the statute. *Id.* at 878-79 & n.7.

[4] The drafters of the UAA specifically contemplated an advisory process. In the official comments, the drafters stated:

> At its core, arbitration is supposed to be an alternative to litigation in a court of law, not a prelude to it. It can be argued that parties unwilling to accept the risk of binding awards because of an inherent mistrust of the process and arbitrators are best off contracting for advisory arbitration or foregoing [sic] arbitration entirely and relying instead on traditional litigation.

UAA § 23 cmt. B(1), 7 pt. 1A U.L.A 80. So, while the law does not recognize arbitration that is not binding under the statute, it also does not recognize a process that is clearly nonbinding to be subject to the arbitration statute.

controversy is subject to an agreement to arbitrate. RCW 7.04A.060(2).

IV. *The Agreement*

¶13 The WUAA defines "agreement to arbitrate" as an "agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement." RCW 7.04A.060(1). "Record" is defined as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." RCW 7.04A.010(7). Since there is a written record here, we review that record to determine whether the agreement of the parties fell within RCW 7.04.060(1) and triggered the arbitration statute.

A. *The Express Agreement Was to a Nonbinding Procedure*

¶14 The 2007 settlement and release agreement did not contain an arbitration provision. The agreement to the proceeding before Judge Donohue was entered into later. A February 12, 2008 letter from Rimov's attorney, William Symmes, to Schultz's attorney, Robert Dunn, confirmed in writing discussions from a February 12 meeting between Symmes, Dunn and Schultz:

> [T]he parties have agreed to go to a *non-binding arbitration* before Judge Donohue in a summary judgment fashion with no live witnesses with regard to the enforceability of the Settlement Agreement and Release.

(Emphasis added.) Dunn responded on February 14:

> [T]here is an agreement to participate in a *non-binding arbitration* concerning the enforceability of the Release Agreement. Mary has agreed to advance 1/2 of the arbitrator's fees, with Ms. Rimov paying the other half.

(Emphasis added.) Symmes responded on February 15:

> We have no disagreement on the arbitration.

These writings contain the parties' agreement regarding the dispute resolution procedure.

¶15 A contract exists when there is mutual assent to its essential terms. *Weiss v. Lonnquist*, 153 Wn. App 502, 511, 224 P.3d 787 (2009). In determining the mutual intention of the contracting parties, the unexpressed, subjective intentions of the parties are irrelevant; the assent of the parties must be gleaned from their outward manifestations.[5] *Id.* When construing an agreement, we give effect to every word so as not to render any word superfluous. *Nishikawa v. U.S. Eagle High, LLC*, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007).

¶16 In the agreement formed by the February 12 and 14 letters, each side explicitly stated that it agreed to nonbinding arbitration. We give "nonbinding" its ordinary meaning: not binding. The references to the proceeding as nonbinding signaled that the parties expressly intended not to have a binding arbitration.[6] While each party referred to the proceeding at least once in their correspondence as an "arbitration" without the modifier "nonbinding," these ref-

---

[5] Rimov argues that this court must accept her proffered facts as true and draw all reasonable inferences in her favor. Schultz argues that it is improper to review the evidence in favor of Rimov because it would nullify the WUAA and violate the canons of interpretation applied to review of contracts. Schultz also argues that it was error for the trial court to review Rimov's postproceeding declarations regarding her intent. The threshold question is interpretation of the contract, reviewed de novo as a matter of law. That question is dispositive without consideration of the issues or evidence noted here.

[6] Judge Becker explained nonbinding arbitration in her dissent from this court's decision in *Godfrey*:

Nonbinding arbitration is the submission of a dispute to an arbitrator with the understanding at the outset that the result will be purely advisory, and the result will be treated by the parties as a recommendation for settlement. *See* Washington State Bar Ass'n, Alternative Dispute Resolution Deskbook: Arbitration and Mediation in Washington § 9A.3(1), at 9A-5 (1989). If the parties do settle as a result of nonbinding arbitration, the court does not confirm the arbitration award; rather, it enforces the settlement contract, the terms of which may be different from the arbitrator's award. Thus, nonbinding arbitration is a valid method of dispute resolution. But the award it produces is outside the statute, subject neither to confirmation under RCW 7.04[.]150, nor to vacation under RCW 7.04.160.

*Godfrey v. Hartford Cas. Ins. Co.*, 99 Wn. App. 216, 225, 993 P.2d 281 (2000) (Becker, J., dissenting), *rev'd*, 142 Wn.2d 885 (2001).

erences were not in the words of agreement. Nor were they in a context suggesting modification of the original agreement. Whether convenient shorthand or inadvertence, these references do not overcome the express, repeated use of nonbinding as a modifier in the words of the agreement. The use of nonbinding to modify arbitration was not inadvertent. We conclude the plain language of the agreement indicates the parties were not agreeing to a binding determination by Judge Donohue, and therefore were not agreeing to arbitration.

¶17 Schultz argues that Rimov intended to be bound by the result of the proceeding.[7] Such a conclusion is not borne out in the record. Schultz points to a statement in an October 23, 2008 e-mail by Rimov's counsel stating:

> I don't care who proceeds first on Monday. Either way, we will argue that the agreement is not enforceable as a matter of law and/or that there are triable issues precluding its enforcement by summary judgment, in effect necessitating a trial.

Schultz responded that same day by e-mail:

> The below [referring to the subjoined e-mail] is not my understanding at all. I agreed to a nonbinding arbitration as to the validity of the agreement. There was no "trial" contemplated.
>
> If that isn't the case, then we have a problem. I have submitted nothing to the mediators as of this point as to funds.

Rimov's counsel responded again on the same day, explaining there would be no trial on Monday, and that

> Judge Donohue will merely determine in a non-binding arbitration whether or not the agreement is enforceable under the totality of the circumstances.

Schultz's interpretation of these communications as somehow asserting that Schultz would be bound by Judge

---

[7] Consideration of the e-mails, the award, and the subsequent conduct of the parties is appropriate under the rule in *Berg v. Hudesman.* 115 Wn.2d 657, 667, 801 P.2d 222 (1990) ("[E]xtrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent.").

Donohue's opinion is untenable. Rimov's counsel was not arguing that Judge Donohue would conduct a trial or that the result would be binding. He was simply stating that Rimov would argue at the proceeding that the prior agreement was not enforceable as a matter of law and that questions of fact would preclude summary judgment, requiring a trial to resolve the remaining issues. These arguments go directly to the question presented to Judge Donohue, but not to whether the answer would be binding and enforceable. Schultz herself was reasserting she agreed only to a nonbinding procedure.

¶18 Judge Donohue also referred to the proceeding as a nonbinding arbitration. In a May 28, 2008 letter to the parties confirming the proceeding, he stated, "This letter confirms the above-referenced non-binding arbitration." His November 13, 2008 decision was captioned, "DECISION ON NON-BINDING ARBITRATION." In that decision, he stated:

> The parties to this arbitration have asked the arbitrator to determine whether the Settlement Agreement and Release of All Claims the parties executed January 22, 2007, hereafter "the agreement," is valid and binding.
>
> . . . .
>
> On the single question presented in the arbitration, I find the agreement to be valid, binding and enforceable.

It was signed by Judge Donohue as "Arbitrator." His deliberate use of the term "non-binding arbitration," juxtaposed with the use of arbitration, suggests awareness that the parties gave significance to the term. Otherwise, he would have used "arbitration" without the modifier throughout the decision.

¶19 Also, neither party treated the opinion of Judge Donohue in the manner contemplated by the arbitration statute. If Judge Donohue had issued a binding arbitration award, Schultz would have had every incentive to seek judicial confirmation in the manner provided by the statute. *See* RCW 7.04A.220. Such confirmation would have

ended this dispute short of the expense and trouble of responding to this suit. She did not. If Rimov believed that Judge Donohue had issued a binding arbitration award, she would have had reason to appeal that award promptly, as failure to do so would have ended the dispute in Schultz's favor. *See* RCW 7.04A.230. Neither party took actions consistent with an immediate understanding that the decision of Judge Donohue was a binding arbitration award. None of the outward manifestations of the parties in entering into the agreement, in the conduct of the procedure, or in its aftermath suggests the slightest contradiction to the express characterization in the agreement as to a nonbinding procedure.

¶20 Courts must indulge every presumption in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability. *Verbeek Props., LLC v. GreenCo Envtl., Inc.*, 159 Wn. App. 82, 87, 246 P.3d 205 (2010); *Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc.*, 148 Wn. App. 400, 405, 200 P.3d 254 (2009); *see also Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula*, 130 Wn.2d 401, 413-14, 924 P.2d 13 (1996). Although public policy strongly favors arbitration as a remedy for settling disputes, arbitration " 'should not be invoked to resolve disputes that the parties have not agreed to arbitrate.' " *ACF Prop. Mgmt., Inc. v Chausse*, 69 Wn App. 913, 919, 850 P.2d 1387 (1993) (quoting *King County v. Boeing Co.*, 18 Wn. App. 595, 603, 570 P.2d 713 (1977)). The parties cannot be compelled to arbitrate unless they have agreed to do so. *Weiss*, 153 Wn. App. at 510. The presumptions referenced above do not overcome the plain meaning of the contract that a nonbinding procedure was chosen. No agreement to arbitrate was made.

B. Godfrey *Does Not Bar Nonbinding Dispute Resolution Merely Because It Is Labeled "Nonbinding Arbitration"*

¶21 Schultz relies on *Godfrey*[8] to argue that notwithstanding their agreed intention, the parties could not submit to nonbinding arbitration as a matter of law. In that case the parties, an insurance company and its insured Godfrey, sought arbitration as agreed to in the insurance policy. *Godfrey*, 142 Wn.2d at 889-90. The policy permitted either party to seek a trial de novo within 60 days if that party did not want to be bound by the arbitrators' decision. *Id.* at 890. After the arbitrators resolved the dispute in favor of Godfrey, the insurance company opposed confirmation of the award on the grounds that it was entitled to a trial de novo under the language of the policy. *Id.* The Supreme Court in *Godfrey* recognized that " '[t]he very purpose of arbitration is to avoid the courts insofar as the resolution of the dispute is concerned. . . . [A]rbitration is a substitute for, rather than a mere prelude to, litigation.' " *Id.* at 892 (emphasis omitted) (second alteration in original) (quoting *Thorgaard*, 71 Wn.2d at 131-32). It held that the provision in the parties' arbitration agreement allowing a trial de novo on the issue of damages was contrary to the arbitration statute:

> To conduct the arbitration that occurred in this case, the parties sought arbitration on both liability and damages; they brought into play the jurisdiction and power of the courts as set forth in the [WUAA]. By so doing, they have activated the entire chapter and the policy embodied therein, not just the parts that are useful to them, such as ability to reduce the award to an enforceable judgment. Once they decided that both liability and damages would be arbitrated, they were not free to say the arbitration as to liability was binding, but as to damages it was not. . . . Arbitration is intended to be final;

---

[8] *Godfrey* was decided under the previous Washington arbitration statute, former chapter 7.04 RCW, *repealed by* LAWS OF 2005, chapter 433. 142 Wn.2d at 889.

parties agree to waive their right to have their disputes resolved in the court system. They cannot submit a dispute to arbitration only to see if it goes well for their position before invoking the courts' jurisdiction.

*Id.* at 897 (emphasis omitted). *Godfrey* therefore stands for the proposition that once parties have agreed to arbitrate an issue, they may not contract around provisions of the arbitration statute. This is consistent with the WUAA. RCW 7.04A.220 and RCW 7.04A.230 (sections 22 and 23 of the revised Uniform Arbitration Act (UAA) (2000), 7 pt. 1A U.L.A. 76-78 (2009)) provide for the scope of judicial review. These provisions do not allow for de novo review. RCW 7.04A.040(3) (section 4(c) of the UAA, 7 pt. 1A U.L.A. 19) prohibits waiver of these provisions.[9] *See also Optimer Int'l, Inc. v. RP Bellevue, LLC,* 170 Wn.2d 768, 773, 246 P.3d 785 (2011) (parties to a lease agreement may not restrict the scope of statutory judicial review of an arbitration award).

¶22 Schultz relies heavily on one sentence in particular from *Godfrey* to support her position:

> While the parties are free to decide by contract whether to arbitrate, and which issues are submitted to arbitration, once an issue is submitted to arbitration, however, [the WUAA] applies. *That code of arbitration does not contemplate nonbinding arbitration.*

142 Wn.2d at 894 (emphasis added). In the context of *Godfrey,* that statement is correct. Once the statute is triggered by an agreement to arbitrate, the finality of the proceeding cannot be altered by agreement. But, a literal reading of the sentence outside the context overstates the

---

[9] The court in *Godfrey* emphasized that "arbitration in Washington is exclusively statutory" and that the governing statute did not permit " 'common law arbitration.' " 142 Wn.2d at 893 (quoting *Puget Sound Bridge & Dredging Co. v. Lake Wash. Shipyards,* 1 Wn.2d 401, 405, 96 P.2d 257 (1939) and citing *Puget Sound Bridge & Dredging Co. v. Frye,* 142 Wash. 166, 177, 252 P. 546 (1927); *Dickie Mfg. Co. v. Sound Constr. & Eng'g Co.,* 92 Wash. 316, 318, 321, 159 P. 129 (1916)). Hence, because "parties to an arbitration contract are not free to craft a 'common law' arbitration alternative to the [WUAA] any efforts to alter the fundamental provisions of the [WUAA] by agreement are inoperative." *Id.* at 896 (citing *Barnett,* 119 Wn.2d 151; *Boyd,* 127 Wn.2d at 262; *Price,* 133 Wn.2d 490).

rule. Neither *Godfrey* nor any provision of the WUAA forecloses the use of an advisory proceeding that is not intended to be binding or final, even though it may have similarities to arbitration.

¶23 In *Godfrey*, there was no dispute that the parties had agreed to arbitration within the meaning of the statute. *Id.* at 892. The arbitration in *Godfrey* was "nonbinding" only in the sense that the parties' contract modified the judicial review provision of the statute when they contracted for trial de novo should either party be unsatisfied in the result. *Id.* at 890. Otherwise, it was binding unless and until someone chose to file for trial de novo. The rule of *Godfrey* was therefore appropriate in that case.

¶24 But, the key to *Godfrey* is the existence of an agreement to arbitrate. Such an agreement requires an invocation of the statute or a clear intent for a final, binding nonjudicial resolution of the dispute. Unlike *Godfrey*, the parties here did not agree to arbitration and then carve out an exception to finality prohibited by the statute itself. *Godfrey* does not require application of the arbitration statute where the parties' agreement seeks only an advisory, nonbinding opinion on their dispute, even if the parties used the term "nonbinding arbitration."

## V. *Conclusion*

¶25 Parties may seek advisory opinions to assist them in resolving disputes. Neither *Godfrey* nor the arbitration statute prevents parties from engaging in nonbinding, nonjudicial dispute resolution. Parties are also free to decide whether they want to arbitrate. The arbitration statute contemplates that both parties will willingly agree to forgo their judicial remedies in exchange for a separate forum. *Id.* at 894. Where the agreement shows that, as here, the parties did not seek finality, application of the arbitration statute is not appropriate. To find that an agreement to binding arbitration exists despite every indication of the party's intentions to the contrary would chill, or even preclude, any future use of nonbinding advisory proceedings to further settlement

efforts. We will not embrace such a result. Here, the parties did not intend the proceeding before Judge Donohue to bind them to a decision enforceable in court. There was no agreement to arbitrate.

¶26 We hold that the parties agreed only to an advisory opinion, which as a matter of law did not trigger the requirements of the arbitration statute. The trial court did not err in refusing to grant dismissal under CR 12(b)(6).

¶27 Schultz is not entitled to fees as she has not prevailed on appeal.

¶28 We affirm.

BECKER and SCHINDLER, JJ., concur.

Reconsideration denied July 25, 2011.

Review denied at 172 Wn.2d 1026 (2011).